# IN THE SUPREME COURT, STATE OF WYOMING

# 2015 WY 154

OCTOBER TERM, A.D. 2015

December 8, 2015

HAROLD H. DISHMAN,

Appellant
(Defendant),

v.

S-15-0039

FIRST INTERSTATE BANK,

Appellee
(Plaintiff).

*Appeal from the District Court of Albany County*
The Honorable Jeffrey A. Donnell, Judge

*Representing Appellant:*
> Mitchell H. Edwards and Julie M. Edwards of Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Edwards.

*Representing Appellee:*
> Megan Overmann Goetz and Jodi D. Shea of Pence and MacMillan LLC, Laramie, Wyoming. Argument by Ms. Goetz.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]     The district court granted a partial summary judgment in favor of First Interstate Bank (FIB) on its judicial foreclosure claim against Harold H. Dishman.  The district court later held a bench trial on FIB's claim for attorney fees and granted most of FIB's requested fees and costs.  Mr. Dishman appeals, claiming the district court violated the rules of civil procedure by allowing FIB's detailed billing statement into evidence when the bank did not produce it until just before trial.  Mr. Dishman also claims FIB's request should have been denied, in whole or in part, because the fees were unreasonable.

[¶2]     We conclude FIB was required to produce its detailed billing statement in support of the claim for attorney fees, but its failure to provide it earlier was harmless.  Given FIB failed to produce the detailed fee statement and did not follow the rules of civil procedure in claiming the information was privileged, the fees associated with the efforts to withhold the information were not reasonable, and the district court abused its discretion by awarding them.  The district court also abused its discretion by awarding fees incurred in unnecessary and unproductive work.  Furthermore, in the interests of equity, we reduce the fees incurred by FIB after the summary judgment to account for its discovery violations.  We, therefore, affirm in part, reverse in part, and remand.

## ISSUES

[¶3]     The issues in this case are:

1.     Whether the district court correctly interpreted and applied Wyoming Rules of Civil Procedure 26 and 37 with regard to FIB's obligation to disclose its detailed attorney fee statement.

2.     Whether the district court abused its discretion in awarding attorney fees to FIB.

## FACTS

[¶4]     The underlying facts of this case are essentially undisputed.  In 2004, Mr. Dishman obtained a $20,000 line of credit from FIB, secured by a mortgage on his house in Laramie, Wyoming.  He renewed the loan in 2009.  From March 2004 through January 2013, Mr. Dishman made all payments on the loan through automatic withdrawals from his account at FIB.

[¶5]     Mr. Dishman, who suffered from dementia, moved into a nursing home at the Laramie Care Center (LCC).  In December 2012, LCC submitted an application to have his social security benefits redirected to pay some of the costs of his care.  After the funds

1

were diverted, the FIB account from which the automatic withdrawals for payment of the loan were taken was closed, resulting in Mr. Dishman's default on the loan.

[¶6]    On October 4, 2013, FIB filed a complaint against Mr. Dishman for judicial foreclosure, seeking the principal balance due on the loan of $14,831.50, together with accruing interest, costs and attorney fees.  FIB attempted various methods to obtain service of process on Mr. Dishman, including personal service on him at the mortgaged property, which was vacant; personal service on him at the nursing home, which was not allowed by staff; personal service upon a staff member at the nursing home; and service by publication.

[¶7]    Mr. Dishman's granddaughter, Lori Dow, was designated as his attorney in fact under a Durable Power of Attorney signed by Mr. Dishman in 2004.  Ms. Dow initially did not respond to FIB's efforts to contact her but, after receiving a November 19, 2013, letter about the pending action, she contacted FIB and retained counsel to file an answer on behalf of Mr. Dishman.  The parties exchanged disclosures pursuant to W.R.C.P. 26, and FIB served additional discovery requests upon Mr. Dishman.  Although they did not make any formal discovery requests, Mr. Dishman's attorneys repeatedly asked FIB to provide its detailed attorney fee statement so they could evaluate the attorney fees claim.  FIB provided verified statements of the attorney fee totals but did not provide the actual billing statements.

[¶8]    The case languished for some time while Mr. Dishman's attorney in fact attempted to sell the property and the parties looked into collateral matters, including the potential that a Medicaid lien would be filed on the house.  With the dispositive motion deadline nearing, FIB filed a motion for summary judgment on all of its claims on July 29, 2014.  In response to the summary judgment motion, Mr. Dishman conceded he owed the principal balance, accruing interest, late fees, annual fees, taxes, and insurance but contested some of FIB's specific claims, including the amount of accrued interest, a cost described as a "lender's foreclosure policy," and attorney fees.  Mr. Dishman objected to the attorney fees request because FIB had not provided its itemized bills, making it impossible to review the reasonableness of the fees.

[¶9]    After considering the parties' filings, the district court granted FIB a partial summary judgment in the amount of $24,631.42, which included the principal due, accrued interest, and most of FIB's costs.  The district court concluded, however, there were genuine issues of material fact concerning the lender's foreclosure policy and FIB's attorney fees request.

[¶10]  FIB filed a motion for *in camera* review of its unredacted verified statement of costs and attorney fees.  It asserted in general terms that the billing statement included confidential information protected by the attorney-client privilege.  However, FIB never pointed to any specific item in the billing which would have been privileged.  FIB also

filed an affidavit from an outside attorney stating its fees were reasonable in light of the circumstances. On October 6, 2014, both parties filed trial summaries, which included their lists of witnesses and exhibits. FIB's trial summary did not include its unredacted attorney fee statement. On October 7, 2014, the district court denied FIB's motion for *in camera* review of its unredacted attorney fee bills. On October 9, 2014, FIB supplemented its exhibit list with the unredacted statement of fees and costs.

[¶11] The district court held a bench trial on the outstanding issues on October 14, 2014. Mr. Dishman objected to admission of the unredacted fee statement because FIB did not produce it as required by the rules of civil procedure. The district court overruled Mr. Dishman's objection and allowed FIB's unredacted fee statement into evidence. FIB later filed a supplemental statement to add the fees associated with the trial, bringing the total amount of fees and costs requested by FIB to $20,615.49.

[¶12] The district court entered an order on November 18, 2014, granting FIB most of its requested fees. The order stated, in relevant part:

> 19. [Mr. Dishman] raises the issue . . . that FIB should not be permitted to present its attorney's fees and costs to this Court because it did not timely submit or disclose its itemized billings. . . . In fact, FIB asserted that this material was privileged and Dishman did nothing to challenge that assertion. Ultimately, this Court held that the subject material was not privileged and FIB promptly produced same. Mr. Dishman had avenues of relief available to him long prior to the trial herein, including seeking this Court's order to compel discovery, of which Mr. Dishman did not avail himself. He cannot now be he[ard] to complain of FIB's assertion of privilege when he took no action to challenge and from which he now seeks to benefit.
>  . . . .
>
> 22. [T]he Court has reviewed the *Verified Statement of Attorney's Fees and Costs,* provided as Exhibit 24 herein, as well as the *Supplemental Verified Statement of Fees,* filed on October 20, 2014, and has considered the evidence and testimony presented at trial. The Court has considered Mr. Dishman's *Defendant's Response in Opposition to Plaintiff's Supplemental Verified Statement of Fees,* filed on November 4, 2014. It is mindful of the fact that Mr. Dishman is *not* asserting that the hourly rate charged was "too high" but simply contending that the amount of time/work invested in

this foreclosure action is not reasonable, particularly where the principal amount due was only $14,831.50.

23. This Court agrees with the parties that a "simple" foreclosure matter would not, and should not, approach anywhere near $15,000 in costs and attorney's fees. The Court also is empathetic to Mr. Dishman's position that, after loyally paying FIB for almost nine years, the cessation of his monthly payments [was] beyond his control in that, despite its knowledge of Mr. Dishman's financial obligations to FIB, the Laramie Care Center arranged for Mr. Dishman's social security payments to be paid directly to LCC, rather than to FIB, apparently without Mr. Dishman's knowledge or consent. [footnote omitted]. This arrangement ultimately led to Mr. Dishman's default and, eventually, to this litigation. Finally, the Court is cognizant of the fact that Mr. Dishman now owes the State of Wyoming more than the likely value of this property in that he owes approximately $173,000.00 for Medicaid services provided to him and his deceased spouse, Patricia Dishman.

24. However, this case was anything but simple. Considering the complications involved in locating Mr. Dishman; the issues concerning his potential incompetence; Mr. Dishman's significant equity in the property; dealing with the vacancy of the property; addressing Medicaid/Medicare concerns; the involvement of multiple attorneys and law firms [for Mr. Dishman]; and the delays in resolution caused, in part, by allowing Ms. Dow to attempt to sell the property, the vast majority of the charge[d] fees and costs are reasonable and were, indeed, necessary. This case involved complicated issues, which took a significant amount of attorney time even though the amount initially sought was relatively small, and the rates charged were reasonable and customary. Overall, this Court does not believe such amounts were unreasonable.

25. The only fees with which this Court takes issue involve those incurred for the hiring and retention of Scott Meier as an expert witness for the purpose of the reasonableness of attorneys' fees. Those amounts were: [list of billing entries totaling $2,394.50].

4

26.    The Court finds these amounts unnecessary in light of Wyoming Statute § 1-14-126(b), which allows the court discretion to award reasonable attorney's fees "without requiring expert testimony."

. . . .

29.    The Court . . . awards a total of attorneys' fees and costs in the amount of **$18,220.99** (the result of the requested amount of $20,615.49 less the amounts associated with Mr. Meier of $2,394.50).

(emphasis in original).  Mr. Dishman filed a timely notice of appeal.

## STANDARD OF REVIEW

[¶13]  We review the question of whether the district court correctly interpreted the rules of civil procedure *de novo*.  *Windham v. Windham,* 2015 WY 61, ¶ 12, 348 P.3d 836, 840 (Wyo. 2015) (applying *de novo* standard of review to Rule 37 interpretation).  The district court's decision awarding attorney fees is reviewed under the abuse of discretion standard.  *Morrison v. Clay,* 2006 WY 161, ¶ 16, 149 P.3d 696, 701 (Wyo. 2006).  A court abuses its discretion if it exceeds the bounds of reason under the circumstances. *Joe's Concrete & Lumber, Inc. v. Concrete Works of Colorado, Inc.,* 2011 WY 74, ¶ 12, 252 P.3d 445, 448 (Wyo. 2011).

## DISCUSSION

### 1.  General Law on Attorney Fees Awards

[¶14]  Wyoming subscribes to the American rule regarding recovery of attorney fees. The rule makes each party responsible for its own fees unless an award is permitted by contract or statute.  *Thorkildsen v. Belden,* 2012 WY 8, ¶ 10, 269 P.3d 421, 424 (Wyo. 2012); *Garwood v. Garwood,* 2010 WY 91, ¶ 32, 233 P.3d 977, 984 (Wyo. 2010).  The party who is seeking an award of fees has the burden of proving the reasonableness of the claimed fees.  To meet that burden, the claimant must present an itemized billing reflecting the time and the rate and evidence demonstrating the fee was reasonable. *Tolin v. State, (In re NRF),* 2013 WY 9, ¶ 7, 294 P.3d 879, 882 (Wyo. 2013). *See also Pekas v. Thompson,* 903 P.2d 532, 536 (Wyo. 1995).  The claimant must show the "nature of the service performed, the time expended, and the hourly fee customarily charged for such service." *Ringolsby v. Johnson,* 2008 WY 127, ¶ 17, 193 P.3d 1167, 1171 (Wyo. 2008), quoting *Jones Land & Livestock Co. v. Fed. Land Bank of Omaha,* 733 P.2d 258, 265 (Wyo. 1987) (emphasis omitted).  As part of his duty to claim only reasonable fees, an attorney must exercise "billing judgment." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939–40, 76 L. Ed. 2d 40 (1983).  "'Billing judgment is usually shown by the

5

attorney writing off unproductive, excessive, or redundant hours.'" *NRF,* ¶ 9, 294 P.3d at 883-84, quoting *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 662 (5th Cir. 2002). An affidavit from a party or an attorney stating only the total amount of fees and that the amount is reasonable is not sufficient to satisfy the burden of proof. *See, e.g., Meyer v. Travelers Ins. Co.,* 741 P.2d 607, 609 (Wyo. 1987); *Greenough v. Prairie Dog Ranch, Inc.,* 531 P.2d 499, 503-04 (Wyo. 1975).

[¶15] In determining the reasonableness of the fee request, Wyoming courts follow the federal lodestar test, which requires a determination of "(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward." *Weiss v. Weiss,* 2009 WY 124, ¶ 8, 217 P.3d 408, 410-11 (Wyo. 2009), quoting *Forshee v. Delaney,* 2005 WY 103, ¶ 7, 118 P.3d 445, 448 (Wyo. 2005). The district court has broad discretion in fashioning an attorney fee award. *See, e.g., Garwood,* ¶ 38, 233 P.3d at 986; *Jensen v. Milatzo-Jensen,* 2013 WY 27, ¶ 35, 297 P.3d 768, 779 (Wyo. 2013). Wyo. Stat. Ann. § 1-14-126 (LexisNexis 2015) provides a list of factors the court may consider in determining an appropriate fee award:

> (b) In civil actions for which an award of attorney's fees is authorized, the court in its discretion may award reasonable attorney's fees to the prevailing party without requiring expert testimony. In exercising its discretion the court may consider the following factors:
>
> (i) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (ii) The likelihood that the acceptance of the particular employment precluded other employment by the lawyer;
>
> (iii) The fee customarily charged in the locality for similar legal services;
>
> (iv) The amount involved and the results obtained;
>
> (v) The time limitations imposed by the client or by the circumstances;
>
> (vi) The nature and length of the professional relationship with the client;

(vii) The experience, reputation and ability of the lawyer
or lawyers performing the services; and

(viii) Whether the fee is fixed or contingent.

[¶16]   In exercising its discretion, the district court has the obligation to scrutinize the fee application "with an experienced eye." *NRF,* ¶ 9, 294 P.3d at 883, citing *Foley v. City of Lowell, Mass.,* 948 F.2d 10, 19 (1st Cir.1991).   As part of that procedure, the district court must "'winnow out excessive hours.'"   *NRF,* ¶ 9, 294 P.3d at 883, quoting *Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 296 (1st Cir. 2001).   Stated another way, "'[b]illing for legal services ... should not be a merely mechanical exercise....   [T]he Court must scrutinize the claim with particular care....   A reasonable fee can only be fixed by the exercise of judgment.'"   *Id.,* quoting *Copeland v. Marshall,* 641 F.2d 880, 888 (D.C. Cir. 1980).

[¶17]   In addition, principles of equity apply to attorney fee awards.   We have explained:

[w]hile the general rule is that a valid provision for attorney's fees in a [contract] is as much an obligation of the contract as any part of it, the trial court still has discretion in exercising its equitable control to allow only such sum as it thinks reasonable. A trial court in its discretion may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable.

*Grommet v. Newman,* 2009 WY 150, ¶ 61, 220 P.3d 795, 817 (Wyo. 2009), quoting *Meyer v. Hatto,* 2008 WY 153, ¶ 26, 198 P.3d 552, 557–58 (Wyo. 2008) (other citations omitted).

## 2.  Admission of FIB's Attorney Fee Statement

[¶18]   The credit agreement and the mortgage executed by Mr. Dishman allowed FIB to recover its attorney fees for enforcement of the agreements.   FIB's complaint for judicial foreclosure of the mortgage on Mr. Dishman's property included a request for an award of attorney fees.   Given the claim for attorney fees, Mr. Dishman asserts FIB violated the Wyoming rules of discovery by failing to produce its detailed attorney fees statement as evidentiary support of its claim.

[¶19]   W.R.C.P. 26 sets out the parties' general discovery obligations and states in relevant part:

(a) *Required disclosures; methods to discover additional matter.* –

(1) Initial disclosures. – Except in categories of proceedings specified in Rule 26 (a) (1) (E), or to the extent otherwise stipulated in writing or directed by order, a party must, without awaiting a discovery request, provide to other parties:

. . . .

(B) A copy of, or a description by category and location of, all documents. . . that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses . . . ;

(C) A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based.

. . . .

Unless a different time is set by stipulation in writing or by court order, these disclosures must be made within 30 days after a party's answer is required to be served under Rule 12(a) . . . .

(b) *Discovery scope and limits.* – Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) – Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any party.

. . . .

(5) Claims of Privilege or Protection of Trial Preparation Materials. –

(A) Information Withheld. When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a

8

manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

. . . .

(c)    *Protective Orders.* – Upon motion by a party or by the person from whom discovery is sought . . . the court in which the action is pending  . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (1) That the disclosure or discovery not be had;
> (2) That the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

. . . .

> (4) That certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

. . . .

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery. . . . The filing of a motion under [this rule] shall stay the disclosure or discovery at which the motion is directed pending further order of the court. . . . Counsel seeking such relief shall request the court for a ruling or a hearing thereon promptly after the filing of such motion, so that disclosure or discovery shall not be delayed in the event such motion is not well taken.

[¶20]  Under Rule 26(a)(1)(B) & (C), a party is required to disclose, without waiting for a discovery request, all documents which it may use to support its claims and a computation of any category of damages claimed by the party, together with all documents upon which the computation is based.  Given FIB was claiming attorney fees, it was required to provide the relevant information regarding its claim.  *See Tolin,* ¶ 7, 294 P.3d at 882; *Pekas,* 903 P.2d at 536.  An itemized billing statement, listing the nature of the services performed, the time expended and the hourly rate is required to prove a claim for attorney fees, and is, therefore, a required disclosure under Rule 26(a)(1)(B) & (C), unless there is a basis to withhold it.  *Id.  See also Ringolsby,* ¶ 17, 193 P.3d at 1170.

9

[¶21] Rule 26 recognizes that certain information may be privileged or protected from disclosure. However, under Rule 26(b)(5)(A), when a party withholds information otherwise discoverable on the basis that it is privileged, the party must make the claim expressly and describe the nature of the documents withheld in a "manner that . . . will enable other parties to assess the applicability of the privilege or protection." Often, this information is provided via a privilege log. *See generally*, *Williams v. Sprint United Mgmt. Co.,* 238 F.R.D. 633, 645 (D. Kan. 2006) (interpreting analogous federal rule). The party seeking to withhold the information may file a motion for a protective order under Rule 26(c). When seeking a protective order, counsel is required to request a hearing or ruling promptly after the motion is filed to avoid unduly delaying discovery. Rule 26(c). The party asserting the privilege has the burden of establishing it applies. *Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir. 1992). *See generally*, *Aland v. Mead,* 2014 WY 83, ¶ 77, 327 P.3d 752, 773 (Wyo. 2014) (recognizing the State had burden of proving requested documents were protected by the attorney-client privilege).

[¶22] The record in this case does not indicate that FIB provided a detailed attorney fee statement or a privilege log as part of its initial disclosures. Indeed, FIB apparently did not formally claim the information was privileged until after the district court granted the partial summary judgment and ruled there were genuine issues of material fact regarding the attorney fees claim. FIB finally asserted in its motion for *in camera* review of its unredacted statement of costs and fees that the statement "contains confidential attorney-client privileged information that Plaintiff does not waive." Even that filing did not satisfy the privilege log requirement of Rule 26(b)(5)(A) or constitute an appropriate motion for a protective order under Rule 26(c).

[¶23] The district court eventually ordered disclosure of the attorney fee statement when it denied FIB's motion for *in camera* review, effectively rejecting FIB's claim that the attorney fee statement was privileged. The district court was correct. Attorney fee statements are not privileged simply because they pertain to the attorney-client relationship. Wyo. Stat. Ann. § 1-12-101 (LexisNexis 2015) generally describes the privilege as including communications "made to [the attorney] by his client . . . in that relation, or his advice to his client[.]" Attorney billing information often does not fall within that definition. 81 Am.Jur.2d Witnesses § 379 states the general rule:

> Typically, the attorney-client privilege does not extend to the fee agreement, billing records, or expense reports. However, although a simple invoice ordinarily is not privileged, billing records may be protected by the attorney-client privilege where they reveal the nature of the services rendered. . . .
>
> **All narrative statements in attorney fee statements are not per se privileged; rather, parties claiming the privilege**

10

**will have to show its application to particular narrative statements in the billing records**.

(emphasis added and footnotes omitted).

[¶24] In addition, by making a claim for attorney fees, a party generally waives the attorney-client privilege and work product protections. 32B Am.Jur.2d Federal Courts § 2118. "[A] plaintiff waive[s] attorney-client privilege and work product protection with regard to complete, unredacted bills from its attorneys by seeking attorney's fees as damages for breach of contract." *Id.,* citing *Energy Capital Corp. v. United States,* 45 Fed. Cl. 1179 (2000). In *Measom v. Greenwich & Perry Street Housing Corp.,* 752 N.Y.S.2d 194, 196 (N.Y. Civ. Ct. 2002), the court stated: "In seeking to recover their attorneys' fees and expenses, plaintiffs have placed the reasonableness, necessity, and value of their attorneys' services squarely in issue, for plaintiffs' own benefit." "To the extent the attorneys' time records are material and necessary to these issues, plaintiffs have waived any privilege." *Id.* In *Ringolsby,* we addressed the waiver of the attorney-client privilege through submission of attorney fee bills and provided an alternative to parties concerned about such waiver. We stated the claimant "could have reworded the task descriptions on the billing statements in such a manner that attorney-client privilege would not be waived rather than submitting redacted statements." *Ringolsby,* ¶ 21, 193 P.3d at 1171.

[¶25] In sum, when a party makes a claim for attorney fees, the billing statements generally fall within the scope of production required under Rule 26. Attorney fee statements are not, by definition, protected under the attorney-client privilege. There is no blanket rule permitting a party to refuse to produce all of its detailed billing statements. *Tacke v. Energy West, Inc.,* 227 P.3d 601, 609-10 (Mont. 2010). In some instances, however, a billing statement may contain communications between the client and the attorney or legal advice given, bringing it under the definition of privilege in § 1-12-101. If a party believes that some of the material is privileged, it may withhold the information but it must provide an appropriate privilege log. It may also file a motion for a protective order, so the court can devise a plan to protect truly privileged material while allowing the opposing party a sufficient opportunity to review the bills to determine whether the charges are reasonable. In the alternative, the party can reword the task descriptions to remove the privileged materials. *Ringolsby, supra.*[1]

---

[1] To assist in the just, speedy and inexpensive determination of cases, Rule 26 appropriately places the burden of early disclosure on the party who will present the evidence. We recognize that some privileged information may be included in attorney fee statements. The privilege log and a protective order procedure should adequately protect such information. Rule 26(a) permits a trial court, in appropriate situations, to set times for disclosure or even to defer disclosure until after liability has been established. Nevertheless, a party like FIB cannot simply refuse to provide any information about attorney fees, effectively preventing any discovery on its claimed damages and increasing costs to both sides.

[¶26] Given FIB did not provide its detailed billing statement or a privilege log or file a motion for a protective order, it is clear that FIB did not comply with its discovery obligations under the rules of civil procedure. Consequently, we look to W.R.C.P. 37 for the remedy for the discovery violations:

> *(a)      Motion for order compelling discovery.* –  A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:
>
> . . . .
>
>     (2) Motion.
>
>         (A)     If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.
>
> . . . .
>
> *(c) Failure to disclose; false or misleading disclosure; refusal to admit.*
>
>         (1)     A party that without substantial justification fails to disclose information as required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

[¶27] Mr. Dishman asserts FIB's unredacted billing statement should have been excluded from evidence at trial under Rule 37(c)(1), and, without that information, FIB would have been unable to satisfy its burden of proving its attorney fees were reasonable.

12

The district court rejected Mr. Dishman's argument, faulting him for not filing a motion to compel FIB to produce the documents. During the bench trial, the court repeatedly informed Mr. Dishman's counsel that, since they elected not to pursue production of the documents through a motion to compel, it was not going to exclude the documents from the evidence at trial.

[¶28] A litigant can certainly file a motion to compel production of information it believes it is entitled to under the rules of discovery, and that will often be the most prudent course of action. However, by placing the burden of compelling production of the documents upon Mr. Dishman, the district court misinterpreted the requirements under Rules 26 and 37. Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289.1 (3d ed. 2015) explained that F.R.C.P. 37(c)(1), which is similar to W.R.C.P. 37(c)(1), provides for "automatic exclusion" of the undisclosed materials, although courts still have discretion and may choose to impose alternative sanctions. The authors described the purposes of the rule:

> In large measure, [the automatic exclusion] sanction was intended to put teeth into the mandatory initial disclosure requirements. . . . **The sanction is automatic in the sense that there is no need for the opposing party to make a motion to compel disclosure . . . in order to compel a further disclosure, as a predicate for imposition of the sanction of exclusion.** . . .
>
> The sweep of this exclusion is softened by the proviso that it should not apply if the offending party's failure to disclose was "substantially justified," and that even if the failure was not substantially justified the exclusion should not apply if the failure was "harmless."

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289.1. Thus, the district court incorrectly interpreted the discovery rules when it stated that Mr. Dishman was required to file a motion to compel before the automatic exclusion sanction could be applied.

[¶29] Rule 37(c)(1) provides that a party who, without sufficient justification, fails to disclose information as required by Rule 26 is not permitted to use that evidence at trial, unless the failure is harmless. Mr. Dishman claims FIB's failure to disclose its statement until October 9, 2014, for the trial on October 14, 2014, was not harmless because his legal team had only one business day to review the information. The certificate of service accompanying the unredacted fee statement says it was hand delivered to Mr. Dishman's attorneys on October 9, 2014. The record also contains an email communication indicating that FIB emailed the unredacted information to Mr. Dishman's attorneys at 9:26 a.m. on Thursday, October 9, 2014. Mr. Dishman's attorneys, therefore,

13

had over four days to review the information, although that period included a weekend and Monday, October 13, 2014, which was Columbus Day.

[¶30] The trial transcript demonstrates that Mr. Dishman was sufficiently prepared to challenge FIB's attorney fees request. Mr. Dishman's attorneys questioned FIB's numerous witnesses extensively and in great detail about the proceedings in the case and various entries in the attorney fees statement. In addition, the October 9, 2014 email from FIB's attorneys, which included the unredacted fee statement, said: "If you need more time to review this before trial is scheduled, I will not object to a continuance." Mr. Dishman did not request a continuance. Under these circumstances, FIB's failure to provide the information required by Rule 26 was harmless. The district court did not err by allowing the unredacted fee statement into evidence.

[¶31] Mr. Dishman also complains that by allowing FIB to present the unredacted fee statement at trial, FIB was given "more than one bite at the apple," contrary to our decision in *Ringolsby*. Ringolsby was awarded damages, attorney fees and costs in an earlier action. While attempting to collect the judgment, he filed an action to pierce the corporate veil. After securing a judgment on the piercing claim, Ringolsby filed a motion for attorney fees and costs using a redacted billing statement. Although he offered to provide the unredacted statement for *in camera* review if requested by the district court, the court ruled that Ringolsby had not met his burden of proving his attorney fees were reasonable and was not entitled to a second opportunity through an *in camera* review of the billing statement. *Ringolsby,* ¶¶ 3-11, 193 P.3d at 1168-69. This Court upheld the district court's ruling. *Id.,* ¶¶ 16-18, 193 P.3d at 1170-71. *See also Pekas,* 903 P.2d at 537 (stating "if a party has had an opportunity to present proof of attorney fees to the trial court, and they fail to do so, the award will be summarily reversed on appeal with no remand.").

[¶32] *Ringolsby* addressed a much different situation than the present case. Here, the only evidentiary hearing on attorney fees took place during the bench trial. The unredacted fee statement was presented at that time. FIB asked, in a pretrial motion, for permission to present the statement *in camera*, but the district court denied that request. Contrary to Mr. Dishman's assertion, his earlier communications asking for the information did not provide FIB with opportunities (bites of the apple) to prove its attorney fees. Likewise, the district court did not deny FIB's request for fees on summary judgment; it merely stated there were genuine issues of material fact that needed to be determined at a full evidentiary hearing. The proceedings in this case did not provide FIB with multiple opportunities to prove its attorney fees claim.

### 3. Attorney Fees Award

[¶33] Mr. Dishman argues the district court abused its discretion by awarding FIB over $18,000 in attorney fees and costs to secure a judgment on a debt with a principal balance

of less than $15,000. He asserts FIB's fees were not reasonable. As we stated, *infra,* the district court has broad discretion in awarding fees, but the claimant has the burden of showing the fees are reasonable under the federal lodestar test.

[¶34] The district court accurately stated that this judicial foreclosure action was significantly more complex than a typical advertisement and sale foreclosure. However, in awarding FIB most of its requested fees and costs, the district court did not take into account the bank's discovery violations or its obligation to exercise billing judgment. As we discussed above, FIB did not follow the proper course in asserting its billing statement was privileged, undertake an appropriate analysis to determine whether the information was actually subject to privilege, or make any effort to reword its descriptions to avoid possible disclosure of privileged material. Instead, it simply withheld the information without explanation and then filed a belated motion to present the information to the district court *in camera*.

[¶35] Under these circumstances, it is unreasonable to expect Mr. Dishman to pay fees associated with FIB's improper efforts to avoid its discovery responsibilities and to skirt its burden of proving in open court that its fees were reasonable. *See generally*, *Hensley v. Eckerhart,* 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (discussing generally the concept of carving out unsuccessful or improper fees from an attorney fees award). Some of the improper fees were disallowed as part of the district court's rejection of fees associated with FIB's expert attorney. However, there were other fees associated with FIB's discovery violations that were unreasonable and should have also been denied, including: 1) an October 6, 2014, $182 charge for research on *in camera* review of privileged documents and incorporation of the same into FIB's trial summary; 2) an October 7, 2014, $168 charge for research on *in camera* review; 3) October 9, 2014 charges of $307.50 and $15 for follow-up after the district court denied *in camera* review of the billing statement, preparation of supplemental exhibits (including the unredacted billing statement), and email correspondence with opposing counsel concerning the supplemental exhibits. In addition, FIB charged at least one-half hour of attorney time on five separate occasions for preparation of its statement of fees. That should have been a very simple administrative task involving little more than printing the bills but, because FIB improperly redacted the description of services from the statements, it resulted in $195 in attorney fees. The fees related to FIB's discovery violations totaled $867.50. They were not reasonable and should not have been charged to Mr. Dishman.

[¶36] The district court's decision also does not reflect that it held FIB to its duty to exercise billing judgment by "writing off unproductive, excessive, or redundant hours.'" *NRF,* ¶ 9, 294 P.3d at 883-84, quoting *Green,* 284 F.3d at 662. According to Mr. Dishman, FIB should not have expended funds for: preparing documents for an advertisement and sale foreclosure when it did not proceed that way; exploring various legal issues like lender liability; service by publication; and unnecessary discovery

15

requests. He also claims FIB spent an exorbitant amount of time preparing for summary judgment.

[¶37] As Mr. Dishman points out, FIB's billing statement included charges for preparing for foreclosure by advertisement and sale, which it did not complete. Those fees included: 1) a June 14, 2013 charge of $80 for beginning work on notice of intent to foreclose; 2) a July 15, 2013 charge of $80 for "[b]rief review of foreclosure policy, update to partner, update to client, began revisions to draft of notice of intent to foreclosure;" 3) a July 16, 2013 charge of $176 for "[c]ontinued revisions on notice of intent to foreclosure, finalize documents, forward to partner for review;" 4) a July 31, 2013, $156 charge for "[r]eview of title work, review of 10 day Notice of Intent to Foreclose in draft," and "[c]onsider good faith issues and follow up on the same." In total, FIB charged $492 for preparation of an advertisement and sale foreclosure which was never completed. The time spent in the effort was unproductive and should have been written off as part of FIB's billing judgment.

[¶38] FIB also charged $704 for researching "lender liability" on August 1 and 2, 2013. At trial, FIB's attorney testified the task described as "lender liability" research included investigation of how to properly foreclose upon an incompetent person, the process of judicial foreclosure and how to avoid risks associated with those procedures. The mortgage and the credit agreement executed by Mr. Dishman allowed FIB to recover its attorney fees for enforcement of the agreement. Given Mr. Dishman did not assert a claim for "lender liability" at any time during this action, the time FIB's counsel spent researching lender liability was not necessary to the enforcement of the agreements in this case. The fees associated with research of lender liability were not recoverable.

[¶39] The district court also approved the attorney fees and costs associated with service of process by publication. W.R.C.P. 4 governs service of process and provides in relevant part:

> (d)    *Personal Service.* – The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:
>
> (1) Upon an individual other than a person under 14 years of age or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally, or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person over the age of 14 years then residing therein, or at the defendant's usual place of business with an employee of the defendant then in charge of such place of business, or by delivering a copy of the

16

summons and of the complaint to an agent authorized by appointment or by law to receive service of process;

(2) Upon a person under 14 years of age or an incompetent person, by serving the same upon the guardian or, if no guardian has been appointed in this state, then upon the person having legal custody and control or upon a guardian ad litem;
. . . .

*e) Service by Publication.* – Service by publication may be had where specifically provided for by statute, and in the following cases:

(1) When the defendant resides out of the state, or the defendant's residence cannot be ascertained, and the action is:

(iii) For the sale of real property under a mortgage, lien or other encumbrance or charge;
. . . .

(3) In actions which relate to, or the subject of which is real or personal property in this state, when a defendant has or claims a lien thereon, or an actual or contingent interest therein or the relief demanded consists wholly or partly in excluding the defendant from any interest therein, and . . . defendant's place of residence cannot be ascertained[.]
. . . .

(e) *Requirements for Service by Publication.* – Before service by publication can be made, an affidavit of the party, or the party's agent or attorney, must be filed stating that service of a summons cannot be made within this state, on the defendant to be served by publication, and stating the defendant's address, if known, or that the defendant's address is unknown and cannot with reasonable diligence be ascertained, detailing the efforts made to obtain an address, and that the case is one of those mentioned in subdivision (e); and when such affidavit is filed, the party may proceed to make service by publication. In any case in which service by publication is made when the address of a defendant is known, it must be stated in the publication. Immediately after the first publication the party making the service shall deliver

17

to the clerk copies of the publication, and the clerk shall mail a copy to each defendant whose name and address is known by registered or certified mail and marked "restricted delivery" with return receipt requested, directed to the defendant's address named therein, and make an entry thereof on the appearance docket.

[¶40] FIB filed an affidavit pursuant to Rule 4(f) stating that service of process by publication was warranted because efforts to serve Mr. Dishman at his home were unsuccessful, the property appeared vacant, and, although attempts had been made to serve him at the LLC, it could not confirm that he actually lived there. These statements are contradicted in other parts of the record. In a November 19, 2013 certified letter to Ms. Dow, FIB indicated the bank was aware that Mr. Dishman lived at LLC, it had been informed by LLC that Ms. Dow held power of attorney for Mr. Dishman and gave her notice the case was pending in district court.

[¶41] The record also indicates that FIB knew Mr. Dishman was incompetent. FIB's attorney, Megan Goetz, testified:

Q. Were there issues – once the complaint was drafted, were there issues in getting Mr. Dishman served?
A. There were.
Q. Can you please describe those?
A. We were unable to get Mr. Dishman served at [the mortgaged property]. We had been told through a grapevine chain of communications at the bank that we believed initiated with Ms. Dow that Mr. Dishman was located at the Laramie Care Center. We had been sending demand letters and notices via certified mailed to Mr. Dishman at both addresses.

Interestingly enough, they were being returned. They were initially returned by the Laramie Care Center, later accepted. At one point the certified mailing was actually changed. We're not sure how that happened. But someone changed the address on the green card and had it sent to Ms. Dow at [her] address.

We then received that notice and tried to make contact with Ms. Dow at [her address] and the letters were returned.

And we received – I received a call from Laramie Care Center finally saying, yes, he was there, he was incompetent, and we should stop contacting them or trying to get any information out of them.

18

[¶42] Service of process by publication is only allowed when personal service is not reasonable or practical. *See, e.g.*, *First Wyo. Bank, N.A., Rawlins v. Trans Mountain Sales & Leasing, Inc.*, 602 P.2d 1219, 1223 (Wyo. 1979); *In re Longquest's Estate*, 526 P.2d 994, 998 (Wyo. 1974). FIB knew Mr. Dishman's location, knew he was incompetent, believed Ms. Dow was his attorney-in-fact, and knew her address. Consequently, it could have personally served Mr. Dishman under Rule 4(d)(2) by serving Ms. Dow. FIB's counsel charged $270 in fees for service by publication and the cost of publication was $693, for a total of $963. Those expenses were unreasonable and should have been deducted from FIB's request.

[¶43] Mr. Dishman also challenges the fees associated with FIB's discovery requests, seeking information about the status and condition of the house and an accounting of the payments he had made to the bank. He claims the bank could have obtained the information about the house by driving by and FIB already had the information about his payments. The district court did not abuse its discretion by allowing FIB to recover the fees associated with the discovery requests. The bank was entitled to detailed information about its collateral, i.e., whether it was occupied, its condition, and who was taking care of any required maintenance. The question about Mr. Dishman's records of the payments he made to the bank was also relevant to determine whether there was any discrepancy in the bank's accounting and calculation of the amounts due.

[¶44] Finally, Mr. Dishman challenges the amount awarded to FIB for preparation of the summary judgment materials, which he calculates as $3,611. Mr. Dishman's principal argument is that FIB's right to a judgment on the amounts due under the line of credit was not contested. The district court correctly recognized there is nothing in the record showing that Mr. Dishman conceded the debt or the principal amount due early in the litigation. In fact, the documents in the record, including his answer which denied almost every allegation of the complaint, demonstrate that all of FIB's claims were at issue until Mr. Dishman responded to FIB's motion for summary judgment. At that point, he conceded he owed the principal amount of the debt, accrued interest and most of the costs. Although the fees awarded FIB for preparation for summary judgment were significant, we are not convinced the district court abused its discretion by allowing them.

[¶45] However, many of the fees incurred after summary judgment could have been avoided if FIB had complied with its discovery obligation and produced the unredacted attorney fee statement earlier in the litigation. The district court's incorrect understanding of the discovery rules gave it a skewed perspective in determining whether FIB's post-summary judgment fees were reasonable. The trial transcript demonstrates that Mr. Dishman would have challenged some of the charges regardless of when the unredacted statements were produced, but the parties may have been able to agree on others. We cannot determine, in hindsight, which fees would have been incurred even if FIB had produced its complete fee statement in a timely manner as required by the rules of discovery. Nevertheless, we conclude it is inequitable to allow FIB to recover all of its

fees when earlier production of the descriptions of the nature of services would have helped the parties focus on the items actually in dispute. *See Grommet, supra.*

[¶46]  We have, in the past, approved a district court's determination that fees should be reduced by an overall percentage.  In *NRF,* ¶ 20, 294 P.3d at 888, we affirmed the district court's decision reducing the attorney fees by fifty percent.  Under the circumstances of this case, we conclude equity requires that we reduce the post-summary judgment fees, which we have not already disallowed, by fifty percent.  The total of these fees is $4,100, so fifty percent is $2,050.  We conclude, therefore, the district court allowed $5,076.50 in fees that were improper.  Consequently, the amount of attorney fees that should have been awarded was $13,144.49 ($18,220.99 awarded by the district court less the $5,076.50 in improper fees).

[¶47]  Appellee requested an award of attorney fees incurred in responding to this appeal. We conclude that Appellee could have avoided substantial cost, and this appeal, by simply complying with the clear rules related to disclosure of itemized attorney fees statements, and with WRCP 26.  As we have affirmed only in part, and reversed in part, we find that each party should bear its own costs and attorney fees incurred in this appeal.

[¶48]  Affirmed in part, reversed in part, and remanded for entry of an order granting FIB's request for attorney fees in the amount of $13,144.49.