2003 WY 149

**John D. AHRENHOLTZ and Pam D. Ahrenholtz; Ahrenholtz Masonry, Inc.; and Point North LLC, Appellants (Plaintiffs),**

v.

**LARAMIE ECONOMIC DEVELOPMENT CORPORATION, a Wyoming non-profit corporation; Robert J. "Joel" Coffey; and Robert Boysen, Appellees (Defendants).**

No. 02–165.

Supreme Court of Wyoming.

Nov. 19, 2003.

As Amended on Rehearing Dec. 24, 2003.

Representing Appellants: John E. Stanfield of Laramie, Wyoming, and Walter Urbigkit of Cheyenne, Wyoming. Argument by Messrs. Stanfield and Urbigkit.

Representing Appellees: Philip A. Nicholas of Anthony, Nicholas, Tangeman & Yates, LLC, Laramie, Wyoming for appellees Laramie Economic Development Corporation and Robert Boysen; and Mason F. Skiles and Joseph A. Rodriguez of Skiles & Rodriguez, LLC, Laramie, Wyoming, for appellee Robert J. "Joel" Coffey. Argument by Messrs. Skiles and Nicholas.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] John D. Ahrenholtz, Pam D. Ahrenholtz, Ahrenholtz Masonry, Inc. and Point North, LLC appeal an order of the district court granting summary judgment on their complaint that the defendants Laramie Economic Development Corporation (LEDC), Robert J. "Joel" Coffey, and Robert Boysen (collectively defendants) had intentionally interfered with a potential contractual relation or business expectancy relating to the planning and construction of an expansion to the campus of Wyoming Technical Institute (WTI) in Laramie, Wyoming.

[¶ 2] We affirm in part, reverse in part, and remand for trial.

## ISSUES

[¶ 3] John Ahrenholtz (Ahrenholtz) and his co-appellants present two issues for review:

Issue 1: Whether the Trial Court committed error in making the dual findings that there was no genuine issue of any material fact and that each and all defendants were entitled as a matter of law to summary judgment dismissing Plaintiffs' claims of intentional interference with their existent or prospective business opportunity as contractually involved in the Wyoming Technical Institute relocation project (Plaintiffs' Vision 2000 project) proposal.

Issue 2: Whether the Trial Court committed error in failure to give the Appellants as Plaintiffs the benefit in a summary judgment decision of recoverable damage concepts provided by the Restatement (Second) of Torts, § 774A and in particular § 774A(1)(c), Emotional Distress Damages.

Appellees LEDC and Boysen respond with a single statement:

Whether the trial court properly entered summary judgment in favor of defendants Laramie Economic Development Corporation and Robert Boysen, and against Plaintiffs' [sic] on their claim for intentional interference with a business expectancy?

Appellee Coffey sets out two issues for review:

1. Whether there were any material facts or any evidence presented in the District Court by Appellants to even support an allegation of intentional interference with a business opportunity let alone defeat a Motion for Summary Judgment by Appellees.

2. Whether Appellants provided any realistic basis for recovery of purported damages from Appellees including the alleged but unsupported claim of emotional distress.

## FACTS

[¶ 4] WTI operates an automotive and diesel technology school in Laramie, Wyoming. The principal campus is located on U.S. Highway 287 approximately two miles north of the city limits of Laramie. In 1998, WTI leased a portion of a building adjacent to the campus owned by Ahrenholtz Masonry, Inc. (AMI). AMI is a Wyoming corporation jointly owned by the plaintiff Ahrenholtz and his father and brother.

[¶ 5] In April 1998, Jim Mathis, the President of WTI, contacted John Ahrenholtz about the possibility of constructing an addition to the Ahrenholtz building to accommodate an expansion of WTI. The initial discussion quickly evolved from an addition of 10,000 square feet to AMI's existing building into a large project envisioning a substantial expansion of WTI's facilities, including a new building of 50,000 to 150,000 square feet, along with new dormitories and other facilities.

[¶ 6] Ahrenholtz agreed to assist Mathis with the plans for the proposed expansion. Ahrenholtz called the project "Vision 2000." As the project evolved, it became clear that the land where the AMI building was located was inadequate for the proposed expansion. Since the land was located outside of Laramie's city limits and the size of the project necessitated water and sewer services, it was concluded that annexation by the City of Laramie would be required. Ahrenholtz also began investigating the possibility of purchasing adjoining lands to accommodate the growing size of the project.

[¶ 7] Ahrenholtz hired Robert J. Coffey to perform surveying and engineering work on the project. Because of his limited financial resources, Ahrenholtz also began to seek outside investors. In the fall of 1998, Ahrenholtz contacted Robert Boysen, President of LEDC, a non-profit corporation that seeks to further the economic development of the Laramie area, for assistance in locating potential governmental sources of financing.

[¶ 8] Ahrenholtz encountered difficulty in securing financial commitments from potential investors because he did not have a binding agreement with WTI. Accordingly, Ahrenholtz attempted to obtain a letter of intent from Mathis and WTI. Ahrenholtz submitted several letters of intent with various terms but Mathis declined to sign any of them. Mathis indicated that the owner of WTI, Bankers Trust, was in the process of selling the school and, as a result, would not commit to the expansion project.

[¶ 9] Despite the absence of a binding agreement, Ahrenholtz continued to pursue the project. He developed schematics and plans for the proposed facilities, including various revisions suggested by Mathis. Ahrenholtz also purchased land adjoining the property where AMI's building was located. Ahrenholtz's contemporaneous notes indicate that he was aware that there was a risk inherent in his expenditures on the project without an agreement but that possible revenue, if the project came to fruition, was a significant factor in continuing to pursue it.

[¶ 10] In December 1998, Coffey and Boysen approached Ahrenholtz with an offer to invest in the project by purchasing the real estate upon which the expansion was to be located. Ahrenholtz refused the offer. Several months later, in February 1999, Ahrenholtz asked Coffey and Boysen if they would be interested in investing money in the project. This time, they refused the offer.

[¶ 11] Meanwhile, also in December 1998, LEDC purchased land from the City of Laramie located west of the city. The West Laramie property was officially annexed by the City of Laramie in April 1999. At some point, LEDC's property became a potential site for the WTI expansion project. Mathis insisted that WTI did not begin consideration of that property as an alternative location until June 1999. Ahrenholtz contended that consideration had begun much earlier than that and pointed to the minutes of an LEDC meeting of May 11, 1999:

> Gary Crum reported that everything was going as planned with the Wyo. Tech. [e]xpansion project and that recently the City of Laramie approved the annexation of the Wyo. Tech. [p]roperty, which will allow for the development of sewer to the property.

At the time of the meeting, the LEDC West Laramie property had been annexed, but the Ahrenholtz property had not. A potentially

complicating factor was that Boysen had resigned as President of LEDC in April 1999 and taken employment with WTI in early May 1999. Mathis stated that Boysen was hired specifically to help with the expansion of WTI. During a trip in April, Boysen had told Ahrenholtz that, "I need you to not tell me any more about your project. I may be in competition with you."

[¶ 12] In January 1999, Bankers Trust had sold WTI, and the new owners had given Mathis permission to pursue the expansion project. Ahrenholtz continued to pursue investors for his proposal but had no success without a commitment from WTI. Accordingly, Ahrenholtz continued to press Mathis to sign a letter of intent. Finally, Mathis delivered a letter to Ahrenholtz on April 19, 1999, setting forth various conditions Ahrenholtz would have to meet by May 15, 1999 in order to be considered for the project. Mathis testified in his deposition that Ahrenholtz's proposal was still in consideration until sometime in July, when he and Ahrenholtz had a "heated" discussion relating to WTI's consideration of other sites for the expansion location.

[¶ 13] In September 1999, WTI contracted with LEDC to purchase the West Laramie property and entered into an agreement with Bob Blake Builders, Inc. to build the new facilities. It was subsequently disclosed that Coffey had done some surveying work in August 1999 for LEDC on the West Laramie property. Coffey also did work for Bob Blake Builders on the construction project itself.

[¶ 14] Ahrenholtz, along with his wife and corporate entities AMI and Point North, subsequently filed suit against LEDC, Boysen, and Coffey.[1] Ahrenholtz asserted six causes of action: (1) intentional interference with a business expectancy; (2) professional misconduct (specific to the defendant Coffey only); (3) conversion; (4) fraud; (5) conspiracy; and (6) intentional infliction of emotional distress. The defendants responded with a motion to dismiss that was converted into a motion for summary judgment when the de-

fendants attached documents to their initial motion.

[¶ 15] After allowing discovery and the submission of briefs, the district court granted the motion for summary judgment in part and denied it in part. Initially, the district court dismissed Ahrenholtz's wife from the proceeding since it was unable to determine that she played any role in any of the events constituting the basis for the action. The district court quickly dismissed the claims for intentional infliction of emotional distress, conspiracy, fraud, and conversion on the basis that there was no evidence to sustain the claims. On Ahrenholtz's main claim of interference with a business expectancy, the district court noted "it would seem that perhaps there is possibly an inference that some kind of interference may have occurred." However, the court noted that when the specific acts of the defendants were broken down, an "impermissible leap of logic" was required to reach that conclusion. Essentially, the district court concluded that the evidence supported a conclusion that Ahrenholtz simply was unable to put together a proposal with the necessary financing and physical infrastructure (sewage, water systems). The court noted that in context the "evidence appear[ed] to be undisputed that none of the Defendants intentionally or improperly interfered with the Plaintiffs' pursuit of their contract or business expectancy with WTI." The final cause of action was the professional misconduct claim against Coffey. The district court denied the motion for summary judgment on that claim because Coffey had failed to provide testimony from an expert witness setting forth the standard of care and establishing that Coffey's actions were not a violation of that standard. The court retained the claim against Coffey and certified the remainder of its decision on the motion for summary judgment as a final order pursuant to W.R.C.P. 54(b) finding that there was no just reason to delay an appeal. Ahrenholtz challenges the district

---

1. Ahrenholtz entered into an agreement with WTI releasing any claims against it. According-ly, WTI is not a party to this action.

court's decision on the defendants' motion for summary judgment in this appeal.[2]

## STANDARD OF REVIEW

[¶ 16] We have set out our standard for reviewing summary judgments innumerable times:

The standard of review applied by this Court in reviewing the granting of summary judgment is well-settled. "When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record. We separate the formal and pretended from the genuine and substantial so only the latter may be considered in eliminating the burden of a formal trial if only questions of law are left to decide; there must be no issue of material fact to decide. A material fact, expressed in various ways, is one having legal significance which would in a given case control the legal relations of the parties; one upon which the outcome of the litigation depends in whole or in part; one on which the controversy may be determined; one which will affect the result or outcome of the case depending upon its resolution; or one which constitutes a part of the plaintiff's cause of action or the defendant's defense. Summary judgment affords an opportunity for prompt disposi-

tion of a lawsuit in its early stages, permitting an end to unfounded claims and avoiding the expense of a full-fledged trial to both litigants and the state's judicial machinery." *Reno Livestock Corp. v. Sun Oil Co. (Delaware)*, 638 P.2d 147, 150–51 (Wyo.1981) [ (citations omitted) ].

*Hoblyn v. Johnson*, 2002 WY 152, ¶ 11, 55 P.3d 1219, ¶ 11 (Wyo.2002) (quoting *McLean v. Hyland Enterprises, Inc.*, 2001 WY 111, ¶ 14, 34 P.3d 1262, ¶ 14 (Wyo.2001)).

## DISCUSSION

[¶ 17] The elements of a claim for tortious interference with a prospective contractual relation:

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts, § 766B (1979); *Birt v. Wells Fargo Home Mortgage, Inc.*, 2003 WY 102, ¶ 71, 75 P.3d 640, ¶ 71 (Wyo.2003).

[¶ 18] Ahrenholtz contends that the evidence produced through affidavits, depositions, and documents was sufficient to create an issue of material fact necessitating a trial. His argument is predicated on the inferences one could reasonably draw from the facts noted above. At a minimum, Ahrenholtz contends that these facts and inferences create a material issue of fact as to whether or not there was intentional interference causing a termination of his relationship or business expectancy with WTI.

[¶ 19] The defendants, on the other hand, contend that there was neither a contract nor

---

2. On appeal, Ahrenholtz has only raised a challenge to the district court's ruling on its claim for intentional interference with a business expectancy and the dismissal of his wife from the litigation that implicates the efficacy of the district court's decision dismissing the intentional infliction of emotional distress claim. Since Ah-

renholtz does not address the district court's ruling on the other claims, we deem them waived and will not consider the district court's decision relating to them. *See O'Donnell v. Blue Cross Blue Shield of Wyoming*, 2003 WY 112, ¶ 8, n. 1, 76 P.3d 308, ¶ 8, n. 1 (Wyo.2003).

a business expectancy that could be interfered with by them. They note that Ahrenholtz acknowledged that he did not have any agreement with WTI and that his work on the project was a "gamble" where he had "gone out on a limb." Furthermore, they insist that the district court correctly found that there was no evidence they had intentionally interfered with any relationship Ahrenholtz had with WTI. Specifically, they point out that the West Laramie land was not considered as a potential site until June 1999 and that the President of WTI, Mathis, testified in his deposition that Boysen had no influence over the final decision on where the expansion was to be located or who would be hired to construct the facilities. In short, the defendants contend that there are no facts that could support Ahrenholtz's contentions, and that the district court properly granted the motion for summary judgment.

[¶ 20] Our decision on appeal is guided by our standard of review. As noted above, we are constrained to view the record in a manner that is most favorable to the party opposing the motion for summary judgment, Ahrenholtz. The inference that Ahrenholtz draws from the evidence is that Coffey and Boysen used their knowledge of his project and, in the case of Boysen, his position as President of LEDC and later as an employee of WTI, to cause the rejection of Ahrenholtz's proposal in favor of construction of the expansion project on land purchased from LEDC. The facts Ahrenholtz cites in support of his contention include:

- In December 1998, Coffey and Boysen offered to invest in the proposed project by purchasing Ahrenholtz's property. The offer was declined.
- In the same month, LEDC purchased land west of Laramie that was annexed by the City of Laramie in April 1999.
- In February 1999, Ahrenholtz asked Coffey and Boysen if they would invest money in the project. They declined the offer.
- In April 1999, Boysen resigned as President of LEDC and went to work for Mathis at WTI. Boysen was hired specifically to assist WTI with their expansion.
- Also in April, Boysen told Ahrenholtz not to reveal any additional details about his proposal because he might "be in competition with [Ahrenholtz]."

- In early May, a comment was made at an LEDC open meeting that the WTI project was proceeding as planned and "recently the City of Laramie approved the annexation of the [WTI] Property, which will allow for the development of sewer to the property." The LEDC property had been annexed by the City of Laramie several weeks before the meeting. Ahrenholtz's property had not been annexed.
- WTI ultimately rejected Ahrenholtz's proposal and built its new facilities on the West Laramie site, which WTI had purchased from LEDC in September 1999.
- Coffey did survey work for LEDC on the West Laramie property and then, after it was sold to WTI, did work on the construction of the new facilities.

The district court acknowledged there was the possibility of an inference that some kind of interference took place; however, it concluded that when the specific acts of the defendants were examined, it required "an impermissible leap of logic to reach that conclusion." In other words, the court concluded that there was no direct evidence of interference; hence, the inferences were not sufficient to avoid summary judgment.

[¶ 21] We must disagree with the district court's conclusion. We acknowledge that the evidence offered by Ahrenholtz in opposition to the motion for summary judgment was circumstantial in nature. However, "circumstantial evidence is not evidence of a lower order; the law makes no distinction between the weight to be given to either direct or circumstantial evidence." *John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1357–58 (Wyo.1998). The facts of this case are largely not disputed. What is disputed is the meaning of those facts. For example, the parties vigorously dispute the meaning of the statement made at the open meeting of the LEDC in May 1999. This evidence carries some importance because, if true, it would contradict the defendants' testimony as to when WTI began consideration of LEDC's West Laramie property as a potential expansion site (which, in turn, would impact the overall credibility of the defen-

dants). Ahrenholtz notes that the statement must refer to the West Laramie property owned by LEDC because it had been annexed by the city at that time, while the Ahrenholtz property had not. The defendants counter with an affidavit from LEDC's secretary that the reference was to Ahrenholtz's property and a draft annexation relating to that property which was pending at the time. This is a question of credibility. Did the statement mean what it purports to say on its face or did it mean what the person who recorded the statement (but was not its author) says it meant? The fact that the secretary was an employee of one of the parties to this action is a factor that would have to be considered in determining what inferences, if any, should be drawn from this piece of evidence.

> Summary judgment should not be granted where contradictory inferences may be drawn from undisputed evidentiary facts. Even where the facts bearing upon the issue of negligence are undisputed, * * * if reasonable minds could reach different conclusions and inferences from such facts, the issue must be submitted to the trier of fact. Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment. Summary judgment is not appropriate where the record, including documents and pleadings, establishes facts which give rise to contradictory inferences, one of which supports the party opposing the motion.
>
> * * * The motion for summary judgment is a drastic remedy and one which is designed to pierce the formal allegations and reach the merits of the controversy but only when no material issue of fact is present. * * * Although both parties are obligated to come forward with their evidence, the burden is on the moving party to demonstrate *clearly* that there is no genuine issue of material fact and if that is not done, the motion for summary judgment should be denied. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions.

> * * * If the evidence is subject to conflicting interpretations or reasonable minds might differ as to its significance, summary judgment is improper.

*Cordova v. Gosar,* 719 P.2d 625, 639 (Wyo. 1986) (emphasis in original) (quoting *Weaver v. Blue Cross–Blue Shield of Wyoming,* 609 P.2d 984, 986–87 (Wyo.1980) (internal citations and quotation marks omitted)). Accordingly, we reverse the district court's grant of summary judgment on Ahrenholtz's claim for tortious interference with a contract or a business expectancy and remand for a trial.

[¶ 22] In his second issue on appeal, Ahrenholtz challenges the district court's decision granting summary judgment on his claim for intentional infliction of emotional distress. Ahrenholtz concedes that this issue is related to the status of his wife, Pam Ahrenholtz, as a plaintiff.

[¶ 23] In its decision letter, the district court dismissed Pam Ahrenholtz as a party because it was "unable to determine that Mrs. Ahrenholtz played any part in this matter." In a separate section of the decision letter, the district court concluded that there was no evidence that the defendants' conduct rose to a level required to sustain the claim for intentional infliction of emotional distress.

[¶ 24] In order to prevent summary judgment on this claim, Ahrenholtz had to present evidence that the defendants, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress. *Wilder v. Cody Country Chamber of Commerce,* 933 P.2d 1098, 1105 (Wyo.1997). Ahrenholtz contends that the Restatement of Torts allows for the recovery of damages for intentional infliction of emotional distress in conjunction with an action for interference with a contract or business expectancy. *See* Restatement (Second) of Torts § 774A(1)(c) (1979). Ahrenholtz urges this Court to accept that section of the Restatement and reinstate Pam Ahrenholtz as a party.

[¶ 25] The problem with Ahrenholtz's argument is that it presupposes he has presented sufficient evidence of emotional damages to avoid the motion for summary

judgment. Our review of the record convinces us that he has not. Quite simply, there is no evidence that we could find anywhere in the voluminous record on appeal that would support a claim for emotional damages. There is only the basic allegation that Pam Ahrenholtz was emotionally damaged. That is not sufficient to avoid the motion. The district court's order dismissing Pam Ahrenholtz from the proceedings and granting the motion for summary judgment on the claim for intentional infliction of emotional distress is affirmed.

## CONCLUSION

[¶ 26] The record discloses the existence of material facts in dispute requiring a trial on the merits of the plaintiffs' claims. The district court's summary judgment is affirmed in part, reversed in part, and remanded.