KAUTZ, Justice.
[¶1] Appellee Homax Oil Sales, Inc. filed suit against Appellant Robert W. Downs, claiming he and his daughter had improperly interfered with Homax's business relationship with RKI Exploration & Production. After a bench trial, the district court granted judgment in favor of Homax.
[¶2] On appeal, Mr. Downs claims the district court abused its discretion by allowing Homax to present damages evidence that was not properly disclosed during discovery and improperly awarded damages to Homax. We conclude Homax violated its duty under W.R.C.P. 26 to provide its computation of damages and the documents supporting its damages claim to Mr. Downs, and the district court abused its discretion by admitting Homax's damages evidence at trial. We also conclude the district court's finding on damages was clearly erroneous. Consequently, we reverse the district court's judgment in favor of Homax and direct that judgment be entered in favor of Mr. Downs on Homax's claims.
ISSUES
[¶3] Although the parties present several issues related to the district court's damages award, the following issues are dispositive:
1. Whether the district court abused its discretion by admitting Homax's damages evidence at trial.
2. Whether the district court's damages award was supported by the evidence.
FACTS
[¶4] Mr. Downs owns a ranch in Converse County, Wyoming, which is the site of oil and gas development activities. Mr. Downs' daughter, Amanda Horr, works on the ranch. RKI had oil and gas operations on the Downs Ranch and entered into a surface use agreement with Mr. Downs. RKI contracted with *521 landman, Adam Hughes, to act as its liaison with landowners, including Mr. Downs.
[¶5] Homax sells refined petroleum products such as gasoline, diesel and lubricants. Prior to the events in question, Homax delivered petroleum products to RKI's operations on the Downs Ranch approximately three times per week. RKI and Homax did not, however, have an agreement that required RKI to continue to purchase petroleum products from Homax.
[¶6] On March 23, 2015, a Homax fuel truck drove on a private road within the Downs Ranch, without permission or other authority to do so. Ms. Horr was in Casper, Wyoming, that day, so Mr. Downs told her to go to Homax's office and give it a bill for trespassing on Downs Ranch. Ms. Horr purchased an invoice book, filled out a trespass bill for $1,500, and went to Homax's office to present the bill. Darin Homer, the president of Homax, refused to pay the bill. According to Mr. Homer, Ms. Horr stated that his refusal would affect Homax's business with RKI.
[¶7] After leaving Homax's office, Ms. Horr called Mr. Hughes and told him that she had been treated rudely by Mr. Homer. Mr. Hughes informed RKI representatives of Ms. Horr's report. Later that day, RKI terminated its business relationship with Homax.
[¶8] Homax filed suit against Mr. Downs, claiming improper interference with Homax's business relationship with RKI. It sought damages for "lost business, punitive damages, attorney's fees, and further relief as the Court deems just and proper, including pre and post judgment interest incurred in the prosecution of this action." Mr. Downs counterclaimed for trespass. The district court's order on the pretrial conference set out deadlines for witness and exhibit lists.
[¶9] During the discovery period, Homax produced to Mr. Downs a one-page document purportedly setting out its damages. The document was a simple two-line accounting spreadsheet showing Homax's monthly gross revenue from RKI, with totals of $2,162,542.31 for 2014 and $307,615.21 for 2015. Homax's witness list designated Mr. Homer, Darla Homer, and Peggy Bagner as witnesses on damages, but Homax called only Mr. Homer to testify at trial about its damages. Homax's witness designation provided the following information about Mr. Homer's proposed testimony on damages:
Mr. Homer has been the President/CEO of Homax Oil Sales, Inc. for 13 years and is involved in all aspects and knowledge of the company. Mr. Homer will testify concerning all facts and allegations made in the Complaint, and all facts concerning the damages Homax Oil Sales has incurred as a result of the actions of Defendant in this matter.
...
... Mr. Homer will testify that Homax has had no business dealings with RKI after RKI terminated its business with Homax.
Mr. Homer will testify to the damages in the loss of 2.15 million dollars in revenue in 2014, $306 [t]housand dollars in revenue in early 2015, the [sic] resulting in 2014 Gross Profit damages of $345,279 [and] 2015 Gross Profit damages of $83,573.00 at the time of termination. Mr. Homer shall testify to the computations, the accounting systems, and all associated computations of damages, including the future.
Mr. Homer shall testify to all the aspects of the attempts to mitigate the damage to Homax Oil Sales, Inc., along with the damage to RKI's successor Devon Energy and their unwillingness to allow Homax Oil Sales[ ] to provide fuel to locations on Down[s'] property, as before.
[¶10] Mr. Downs filed two motions challenging Homax's damages evidence-a motion for summary judgment based, in part, upon lack of evidence of lost profit damages and a motion in limine for exclusion of damages evidence because Homax failed to comply with the disclosure requirements of Rule 26. After a hearing, the district court denied Mr. Downs' motions.
[¶11] A bench trial was set to begin January 3, 2017. The week before trial, Homax's counsel filed its third amended exhibit list, indicating that Plaintiff's Exhibit 4 was the same one-page document showing its 2014 and 2015 revenue from sales to RKI that had previously been disclosed. Homax provided *522 copies of its exhibits on a CD, and the copy of Exhibit 4 on the CD only contained the previously disclosed single page. On the first day of the scheduled trial, January 3, 2017, Homax's attorney gave Mr. Downs' attorney a folder with its trial exhibits and asked her to stipulate to their admission. In the paper copy, Exhibit 4 contained three pages, although Homax did not amend its exhibit list to reflect the added pages. Apparently without knowing about the additional pages in Exhibit 4, Mr. Downs' attorney stipulated to the admission of Homax's exhibits contained in the folder, including the expanded Exhibit 4. Because Mr. Hughes did not appear pursuant to his subpoena, the trial proceedings were continued until February 14, 2017.
[¶12] During Mr. Homer's testimony at trial, defense counsel realized that Plaintiff's Exhibit 4 contained three pages. The first page was the same revenue information for 2014 and 2015 previously provided by Homax. The two additional pages, one for 2014 and one for 2015, were each titled "Customer Inquiry" and listed RKI as the customer. The pages contained tables showing, for each month, "Sales," "Costs of Sales," "Profit %," "Profit $," "Cash Recvd," and "No. Invcs."
[¶13] Plaintiff's counsel claimed that he told defense counsel that he had "added a couple in there for foundation on damages." Defense counsel "vehemently" denied that Homax's counsel had informed her that he had added pages to the stipulated exhibits.
[¶14] Mr. Downs' attorney objected to admission of the extra pages and Mr. Homer's testimony about the information contained in those pages. The district court allowed Mr. Homer to testify about all three pages in Exhibit 4 because defense counsel had stipulated to the exhibit, although she was apparently unaware of the additional pages. Mr. Homer testified that Exhibit 4 showed "gross revenue" and "gross profit" from RKI for each month in 2014 and 2015. Homax's counsel then questioned Mr. Homer about Homax's net losses:
Q. So have you calculated your losses, financial losses, from the time you were run off of RKI till [sic] today?
A. Yes, I have.
Q. And what is that amount?
A. It's $330,000 of net income.
According to Mr. Homer, the $330,000 figure represented lost net profits of $132,000 for 2015, $176,000 for 2016, and $22,000 for the beginning of 2017. He estimated future net profit losses from losing RKI's business at $176,000 per year.
[¶15] Defense counsel objected to Mr. Homer's testimony about net profits or income because only gross profit was disclosed in Mr. Homer's witness designation and the documents. The district court overruled the objection, concluding Mr. Homax's witness designation was sufficiently broad to include his testimony about net income.
[¶16] On cross examination, Mr. Homer explained that Homax's gross profit from sales to RKI in 2014 and 2015 was shown on pages two and three of Exhibit 4 and gross profit was calculated by deducting the "costs of goods" from total sales. He also stated that gross profit differs from net profit. To calculate net profit, Mr. Homer testified that "all associated expenses" had to be deducted from gross profit. He testified that he had not produced a list of "all associated expenses" to the defense because he was "never asked for it." Mr. Homer identified what he believed to be "associated expenses" as wages, utilities, truck expenses, advertising, bank charges, cash over short, credit card fees, insurance, laundry and uniform expenses, lease expense, office expense, and payroll tax expense.
[¶17] When asked about the specific expenses incurred by Homax for its business with RKI, Mr. Homer admitted that he did not have that information. Instead, he explained that he had calculated Homax's net profit by applying "a gross profit to net income percentage" for Homax's entire Douglas, Wyoming operation. Mr. Homer also said that he did not believe Mr. Downs "would be liable for gross profit." Defense counsel asked Mr. Homer whether he was reading from a document when listing the various expenses that had to be deducted from gross profit to arrive at net profit. He admitted that he was testifying from some additional spreadsheets, that had never been disclosed to Mr. Downs, because he could not *523 remember the numbers. Mr. Homer's testimony was the only evidence Homax presented about computation of damages.
[¶18] After the trial, the district court granted Homax a judgment of $250,000 for Mr. Downs' tortious interference with prospective contractual relation. It explained that it was awarding damages of $25,000 per month for ten months. The district court referenced the numbers set out in Exhibit 4 in its decision. The ten-month period was based upon testimony from one of Homax's employees as to when RKI's interests in Converse County had been acquired by Devon Energy. The district court found that Homax has ongoing business relationships with Devon Energy in other parts of Wyoming. However, Devon would not use Homax's services in the Downs Ranch area because of Mr. Downs' directive that Homax not provide fuel on his property. The district court ultimately decided that Homax did not present evidence about the agreements it had with Devon "or the sales or profit of those services that are being provided to Devon. So, [it could not] award any amounts from the time that Devon took over to the present time." The district court also granted Mr. Downs nominal damages of $10 for his trespass counterclaim. Mr. Downs appealed.
STANDARD OF REVIEW
[¶19] District courts have discretion in determining the admissibility of evidence, controlling discovery, and selecting the proper means of sanctioning a discovery violation. In re Paternity of HLG, 2016 WY 35, ¶ 7, 368 P.3d 902, 904 (Wyo. 2016) ; Roemmich v. Roemmich, 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010). "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." Wise v. Ludlow, 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015). The appellant bears the burden of demonstrating the district court abused its discretion. Id.
[¶20] When the district court conducts a bench trial and issues findings of fact and conclusions of law, we review its factual findings for clear error and its conclusions of law de novo . Jackman Constr., Inc. v. Rock Springs Winnelson Co., 2016 WY 118, ¶ 13, 385 P.3d 311, 316 (Wyo. 2016) (citing Wimer v. Cook, 2016 WY 29, ¶ 9, 369 P.3d 210, 215 (Wyo. 2016) ).
The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail reweighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
" 'We assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.' "
Shriners Hospitals for Children v. First Northern Bank of Wyoming, 2016 WY 51, ¶ 27, 373 P.3d 392, 403 (Wyo. 2016) (quoting Wimer, ¶ 9, 369 P.3d at 215 (other citations omitted) ).
DISCUSSION
A. Tortious Interference with Prospective Contractual Relation
[¶21] This Court adopted the general description of tortious interference with a prospective contractual relation from Restatement (Second) of Torts § 766B (1979, updated 2018) :
One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
(b) preventing the other from acquiring or continuing the prospective relation.
*524 Ahrenholtz v. Laramie Economic Development Corp., 2003 WY 149A, ¶ 17, 79 P.3d 511, 515 (Wyo. 2003) (as amended on rehearing) (citing Birt v. Wells Fargo Home Mortgage, Inc., 2003 WY 102, ¶ 71, 75 P.3d 640, 663 (Wyo. 2003) ). The specific elements of a claim for tortious interference with contract or prospective contractual relation are:
(1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional and improper interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.
Gore v. Sherard, 2002 WY 114, ¶ 13, 50 P.3d 705, 710 (Wyo. 2002) (quoting Fremont Homes, Inc. v. Elmer, 974 P.2d 952, 955 n.1 (Wyo. 1999) ). See also Sheaffer v. State ex rel., University of Wyoming, 2009 WY 19, ¶ 51, 202 P.3d 1030, 1044 (Wyo. 2009).
[¶22] Damages for tortious interference with prospective contractual relation include the damaged party's lost profits. Exotex Corp. v. Rinehart, 3 P.3d 826, 830 (Wyo. 2000). "In tort actions, 'lost profits' means the expected gains from transactions which the injured party expected to complete" had it not been for the tortious interference. Id. (quoting 22 Am.Jur.2d Damages § 624 (1988) ). Lost profit is a net figure. It is calculated by subtracting the damaged party's necessary costs of doing business from the earnings he lost as a result of the opposing party's improper interference. See, id. See also , Hopper v. All Pet Animal Clinic, Inc., 861 P.2d 531, 548 (Wyo. 1993) (addressing lost profit damages for breach of a covenant not to compete). "Calculating the cost and expense of operation is an essential item in the proof of damages in a suit seeking net lost profits." Hopper, 861 P.2d at 548. Net lost profit must be proven with a reasonable degree of certainty. Id.
B. Disclosure of Damages/Admission of Damages Evidence
[¶23] Mr. Downs asserts the district court abused its discretion by admitting Homax's damages evidence at trial because Homax did not properly disclose its damages in accordance with Rule 26. At the time the parties were conducting discovery, W.R.C.P. 26 (2016)[1] stated, in relevant part:
(a) Required disclosures; methods to discover additional matter.
(1) Initial disclosures. Except in categories of proceedings specified in Rule 26 (a) (1) (E), or to the extent otherwise stipulated in writing or directed by order, a party must, without awaiting a discovery request, provide to other parties:
...
(B) A copy of, or a description by category and location of, all documents ... that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses ...;
(C) A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based[.] ...
...
Unless a different time is set by stipulation in writing or by court order, these disclosures must be made within 30 days after a party's answer is required to be served under Rule 12(a)[.] ...
[¶24] "Under Rule 26(a)(1)(B) and (C), a party is required to disclose, without waiting for a discovery request , all documents which it may use to support its claims and a computation of any category of damages claimed by the party, together with all documents upon which the computation is based." Dishman v. First Interstate Bank, 2015 WY 154, ¶ 20, 362 P.3d 360, 367 (Wyo. 2015) (emphasis added). Homax failed to produce a computation of damages and it failed to produce the documents upon which any computation was based. Despite our clear *525 precedent that the proper measure of damages for tortious interference with prospective contractual relation is lost profit, during the discovery period Homax produced to Mr. Downs only a single document with two accounting lines showing its 2014 and 2015 revenue from sales to RKI. While total revenue would be the starting point in computing lost profit, expenses must be deducted to prove lost profits. See, Hopper, supra. See also, Design Strategies, Inc. v. Davis, 367 F.Supp.2d 630, 633-34 (S.D.N.Y. 2005) (applying F.R.C.P. 26 and concluding that disclosure of lost gross revenue did not meet the requirement for disclosing lost profits). Rule 26 required Homax to provide its damages computation and the supporting documentation, including information about its expenses.
[¶25] Throughout the district court proceedings, Homax asserted that Mr. Downs was required to request specific information about damages before it had the obligation to provide the computations. That is categorically untrue. Under Rule 26(a)(1)(B) and (C) (2016), Mr. Downs was entitled to Homax's damages computation and the documents supporting it without making a discovery request. Homax's one-page accounting report showing only total revenue was clearly insufficient.
[¶26] W.R.C.P. 37(c) (2016)[2] governed Homax's discovery violations:
(c) Failure to disclose; false or misleading disclosure; refusal to admit.
(1) A party that without substantial justification fails to disclose information as required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.
[¶27] In Dishman , ¶ 28, 362 P.3d at 369-70, we stated that W.R.C.P. 37(c)(1) automatically excludes undisclosed evidence. Id. (citing Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289.1 (3d ed. 2015) (discussing automatic exclusion under the similar F.R.C.P. 37 ) ). Thus, a party who fails to comply with its Rule 26 discovery obligations generally is not permitted to use the undisclosed evidence at trial unless the failure was substantially justified or harmless. Id. Additionally, a court may, in its discretion, choose to impose alternative sanctions. Rule 37(c)(1) ; Dishman, ¶ 28, 362 P.3d at 369-70.
[¶28] The party seeking admission of the evidence has the burden of demonstrating that the failure to disclose it was substantially justified or harmless. In re Paternity of HLG, ¶ 25, 368 P.3d at 908 ; Black Diamond Energy, Inc. v. Encana Oil & Gas (USA), Inc., 2014 WY 64, ¶ 45, 326 P.3d 904, 916 (Wyo. 2014). In HLG, ¶¶ 27-28, 368 P.3d at 908-09, we stated that the following factors are relevant in determining whether a party's violation of its discovery responsibilities was harmless:
(1) whether allowing the evidence would incurably surprise or prejudice the opposing party;
(2) whether excluding the evidence would incurably prejudice the party seeking to introduce it;
(3) whether the party seeking to introduce the testimony failed to comply with the evidentiary rules inadvertently or willfully;
(4) the impact of allowing the proposed testimony on the orderliness and efficiency of the trial; and
(5) the impact of excluding the proposed testimony on the completeness of the information before the court or jury.
(citations omitted). See also, Forbes v. Forbes, 2015 WY 13, ¶¶ 79-89, 341 P.3d 1041, 1062-64 (Wyo. 2015).
[¶29] Given Homax insisted in the proceedings below that it was not required to provide its damages evidence to Mr. Downs because he had not requested it in discovery, it made no effort to establish that its failure *526 was substantially justified or harmless. On appeal, Homax still does not expressly recognize that it violated its discovery obligations and, consequently, does not assert that its failure to provide the information was substantially justified. Although it does not make a specific argument on harmlessness, Homax does cite Dishman as supporting the district court's admission of the evidence at trial. In Dishman, ¶¶ 25-26, 362 P.3d at 368-69, we concluded that the plaintiff had violated Rule 26 by failing to provide documentation of its attorney fees claim in discovery. However, we concluded the failure was harmless because the information was provided over four days before trial and it was apparent the defendant was sufficiently prepared to challenge the attorney fees request at trial. Id., ¶¶ 29-30, 362 P.3d at 370.
[¶30] The situation in the case at bar is somewhat more complicated. As we explained above, Mr. Downs stipulated to admission of Exhibit 4, which included two pages not previously disclosed. Homax's attorney claimed he told Mr. Downs' attorney that he had "added a couple in there for foundation on damages." Mr. Downs' attorney denied that conversation and pointed out that the Exhibit 4 provided by Homax in its exhibit list just prior to trial did not contain the additional pages. In any event, the district court held that the entire Exhibit 4 was admissible because Mr. Downs' attorney had stipulated to its admission. As Homax points out, our precedent supports enforcing stipulations. See Jackman Constr., Inc., ¶¶ 32-33, 385 P.3d at 320. However, a court may grant relief from a stipulation for various reasons, including fraud, misrepresentation or mistake. 73 Am.Jur.2d Stipulations § 13 (2018). We do not need to address the disputed question of whether Mr. Downs' stipulation should have been set aside because Exhibit 4, in its entirety, still did not adequately disclose Homax's damages.
[¶31] The two additional pages provided information about Homax's gross profits from sales to RKI in 2014 and 2015. Mr. Homer testified gross profit is determined by subtracting the costs of goods from total sales. However, net profit, not gross profit, is the proper measure of damages. Hopper, 861 P.2d at 548. Evidence about the other expenses which had to be deducted to arrive at a net profit figure was not provided prior to trial. In fact, Mr. Homer testified about those expenses from documents he brought to trial that had never been disclosed to Mr. Downs.
[¶32] Homax violated its obligation under Rule 26 to disclose its computation of lost profits and the documents supporting such computation. Homax does not analyze the factors identified in HLG, supra, as relevant in determining whether a discovery violation was harmless. It is Homax's obligation to show harmlessness, so we will not conduct a comprehensive review of each of the factors. However, we note that Homax's discovery violation clearly was not harmless because Mr. Downs was surprised and prejudiced by the undisclosed damages information. He had no idea until Mr. Homer testified at trial the amount of net profit Homax claimed to have lost as a result of his actions. Mr. Downs also did not have any information prior to trial about the expenses that should be deducted from Homax's total revenues from RKI to arrive at net lost profits. Without that information, Mr. Downs had no way to challenge the reasonableness of the expenses or the accuracy of Homax's claimed damages. Thus, pursuant to Rule 37(c)(1), Homax's damages evidence should not have been admitted at trial, and the district court abused its discretion by allowing Mr. Homer to testify about Homax's lost profits.
[¶33] Homax argues that the district court's damages award can be affirmed because other types of damages are available for tortious interference with prospective contractual relation under Restatement (Second) of Torts § 774A (1979, updated 2018) :
(1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
(a) the pecuniary loss of the benefits of the contract or the prospective relation;
(b) consequential losses for which the interference is a legal cause; and
(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.
*527 [¶34] This Court has never expressly adopted § 774A as the appropriate measure of damages. In Ahrenholtz, ¶ 24, 79 P.3d at 517, the appellant urged us to adopt § 774A to allow damages for emotional distress caused by interference with contract or business expectancy. We concluded that the appellant's emotional distress evidence was insufficient as a matter of law and did not expressly determine whether § 774A set out the proper measure of damages in Wyoming.[3] Id., ¶ 25, 79 P.3d at 517-18.
[¶35] We do not need to determine whether to adopt § 774A in this case, either. If Homax was claiming damages other than lost profits, it had the obligation under Rule 26 to disclose the claimed damages and the evidence supporting its claims. Homax's Rule 26 disclosure listed its claimed damages as: $2,470,157.52 in lost profits and sales; attorney fees; and punitive damages. It did not list the other categories of damages set out in § 774A.
[¶36] In its complaint, Homax only requested damages for "lost business, punitive damages, attorney's fees, and further relief as the Court deems just and proper, including pre and post judgment interest incurred in the prosecution of this action." It made no claim for emotional damages or loss of reputation. It is unnecessary for us to decide whether and to what extent § 774A might apply in Wyoming because Homax did not claim these types of damages in its complaint or in its disclosures. Homax cannot now claim that the damages awarded by the district court related these types of damages.
C. Damage Award
[¶37] In general, damages awarded after a bench trial "are reviewed as fact and are not reversed unless clearly erroneous." Kerbs v. Walck, 2010 WY 53, ¶ 42, 229 P.3d 974, 983 (Wyo. 2010) (citation omitted). As we stated above, the proper measure of damages for tortious interference with prospective contractual relation is net lost profits. The district court awarded Homax $250,000, which represented ten months[4] of damages at $25,000 per month. It relied upon Exhibit 4 to determine the $25,000 per month figure. However, that exhibit showed only gross profits. Mr. Homer testified to a much smaller amount for Homax's net profit from its business with RKI. Mr. Homer estimated that its business with RKI would generate approximately $176,000 per year in net profits, which is $14,666 per month. Consequently, the district court's finding that Homax had lost $25,000 per month because of Mr. Downs' action was clearly erroneous.
[¶38] Additionally, Mr. Homer's testimony about Homax's net profit from RKI's business did not meet the reasonable certainty standard. Hopper, 861 P.2d at 548. He testified that he calculated net profit by using a sixty-two percent (62%) "gross profit to net income percentage" for Homax's entire Douglas operation. He stated that he did not allocate specific expenses associated with RKI's business to determine Homax's net lost profit.
[¶39] In Hopper, 861 P.2d at 548, we said that calculating net profit by applying a net profit percentage to gross profits without prorating specific expenses was insufficient to establish net lost profit damages. The description of the damages evidence in Hopper, 861 P.2d at 548, closely resembles Homax's method of proving damages in this case:
... All Pet's and Alpine's methods of damage calculation were based on figures for gross profits. In his testimony, Dr. Johnson speculated that his net profits from the lost clients would be ninety percent of the gross. ...
*528 The ninety percent net profit assumption defies logic and does not represent any attempt to apply common accounting principles, such as prorating of expenses. The necessary costs of doing business, such as costs of drugs dispensed, accounting charges, staff wages and depreciation on the value of equipment, were never established. Calculating the cost and expense of operation is an essential item in the proof of damages in a suit seeking net lost profits .... Without these calculations, All Pet's and Alpine's damage claims fail.
(citation omitted).
[¶40] Homax's net lost profit evidence was similar to that presented in Hopper. Mr. Homer calculated an estimated net profit loss using net profit margins based upon its entire Douglas operation without prorating expenses to its business with RKI and without applying any specific expense values. Consequently, even if Homax had not violated the rules of discovery, its lost profits damages evidence would not have met the reasonable certainty requirement. The district court's damages finding was, therefore, clearly erroneous.
[¶41] Furthermore, the trial evidence did not support Homax's claim for the other measures of damage under § 774A. In closing argument, Homax's attorney suggested that the district court double its damages award to account for the other measures of damages in § 774A. First, we know of no principle related to actual damages permitting the trial court to simply "double" other damages in making an award for a category of damages unsupported by any evidence. Second, Homax does not direct us to any evidence of emotional distress, so no award would be appropriate for that measure of damages. Finally, there was no evidence to support any damage award for lost reputation or other consequential damages. Perhaps the evidence that Devon Energy refused to use Homax for its operations in the Downs Ranch area could be viewed as evidence of lost reputation or consequential damages resulting from Mr. Downs' actions; however, the district court specifically found Homax had presented insufficient evidence to support an award for the period after RKI sold its interests to Devon Energy.
CONCLUSION
[¶42] Homax did not comply with its obligation under Rule 26 to disclose the computation of its damages and the documents that supported its damages claim. It failed to demonstrate that its failure was substantially justified or harmless, so Rule 37(c)(1) required automatic exclusion of the evidence. Therefore, the district court abused its discretion by admitting Homax's damages evidence at trial.
[¶43] In addition, the district court's finding that Homax had suffered $25,000 per month in damages was clearly erroneous. The trial evidence was not consistent with the amount awarded to Homax, and Homax's method of proving damages did not meet the requirement that damages be proven with reasonable certainty. The record is entirely devoid of proper net income evidence, which is essential for an award of lost profits. Additionally, we have not endorsed the other measures of damages from Restatement (Second) Torts § 774A and do not need to do so here because Homax did not present evidence which would justify an award under that section.
[¶44] The district court's judgment in favor of Homax is reversed. The district court shall enter judgment in favor of Mr. Downs on Homax's claims.
[¶45] Reversed.

Rule 26 has been since been repealed, re-adopted and amended, but the changes do not affect our analysis in this case.

Effective March 1, 2017, Rule 37 was repealed and re-adopted with some changes which do not affect our analysis here.

Historically, this Court has been conservative in recognizing claims for emotional distress damages. See, e.g ., Gates v. Richardson, 719 P.2d 193 (Wyo. 1986) ; Larsen v. Banner Health Sys., 2003 WY 167, 81 P.3d 196 (Wyo. 2003).

There is evidence in the record that RKI sold its interests to Devon Energy five months, rather than ten months, after RKI terminated its business relationship with Homax. Mr. Downs, therefore, claims the district court's finding that Homax lost ten months of business with RKI was clearly erroneous. Given we conclude that Homax's method of proving its damages was legally insufficient, it is unnecessary for us to examine the accuracy of the district court's finding that Homax's losses extended for ten months.