# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 61

APRIL TERM, A.D. 2021

*May 5, 2021*

WYOLAW, LLC,

**Appellant**
**(Petitioner),**

v.

STATE OF WYOMING, OFFICE OF
THE ATTORNEY GENERAL,
CONSUMER PROTECTION UNIT,

**Appellee**
**(Respondent).**

S-20-0148

*Appeal from the District Court of Natrona County*
*The Honorable Catherine E. Wilking, Judge*

*Representing Appellant:*

Timothy D. Elliott of Rathje Woodward LLC, Wheaton, Illinois; Timothy M. Stubson of Crowley Fleck, PLLP, Casper, Wyoming. Argument by Mr. Elliott.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Michael T. Kahler, Senior Assistant Attorney General; Kit Wendtland, Assistant Attorney General. Argument by Mr. Wendtland.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice**.

[¶1]    WyoLaw, LLC filed a petition in district court to set aside an investigative subpoena served by the Consumer Protection Unit of the Wyoming Office of Attorney General ("Attorney General").  It claimed that it was not subject to the Attorney General's investigative authority, that the Attorney General lacked probable cause to support its subpoena, and that the requested documents were protected by the attorney-client privilege and the work product doctrine.  The Attorney General filed a counter-petition to enforce the subpoena.

[¶2]    The district court found that the Attorney General had the authority and probable cause to subpoena the information under the Wyoming Consumer Protection Act, and that WyoLaw failed to demonstrate any ground to set the subpoena aside.  It thus denied the request to modify or set aside the subpoena and ordered WyoLaw to produce the requested documents. We affirm.

## ISSUE

[¶3]    WyoLaw presents several issues on appeal, which we rephrase as follows:

> 1.      What constitutes probable cause for issuance of a subpoena under the Wyoming Consumer Protection Act?
>
> 2.      Can out-of-state consumer complaints provide the Attorney General probable cause to issue a subpoena?
>
> 3.      Was the Attorney General's subpoena supported by the required probable cause?
>
> 4.      Did the Attorney General's investigation based on out-of-state consumer complaints violate the commerce and due process clauses of the United States Constitution?
>
> 5.      Was WyoLaw exempt from investigation under the WCPA because it is a law firm?
>
> 6.      Did the district court abuse its discretion when it ordered WyoLaw to produce the requested documents and information despite its claims of attorney-client privilege and work product protection?

1

# FACTS

[¶4]    WyoLaw, LLC, also known or doing business as Summit Law Firm,[1] is a Wyoming limited liability company.  It was organized on October 31, 2017 by Traci Mears, a former Wyoming lawyer who has since been disbarred from the practice of law in Wyoming.  In 2018, Ms. Mears sold her controlling interest in WyoLaw to two attorneys: Guillermo Geisse, a resident of California, and Mark Scheer, a resident of Missouri.  WyoLaw remains a Wyoming-registered LLC with a registered agent in Wyoming and its mailing address and principal office in Casper, Wyoming.

[¶5]    WyoLaw describes itself as a national law firm that represents clients in approximately forty-four states across the country, with 106 attorney-members in those states.  It claims to provide "legal services to clients located across the United States, particularly clients who are faced with high credit card (and other) debts."  Its client retainer agreement states that it "will assist [clients] with the resolution of burdensome debt" through a "debt resolution program," and that it will provide "legal services" and "non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan performed under the supervision of [WyoLaw's] attorneys."

[¶6]    In 2018 and 2019, the Attorney General received a number of consumer complaints alleging that WyoLaw failed to render debt resolution services as promised.  These included "four (4) formal complaints and three (3) other letters and emails from consumers who contracted with WyoLaw for assistance in negotiating the settlement of their debts."  The Attorney General also learned that the Better Business Bureau serving Northern Colorado and Wyoming had received numerous consumer complaints against WyoLaw and had revoked its accreditation in July 2019.

[¶7]    Based on the consumer complaints, the Attorney General began an investigation into WyoLaw's activities under the Wyoming Consumer Protection Act (WCPA).  As part of that investigation, it served WyoLaw with an investigative subpoena on October 11, 2019.  The subpoena contained twenty-seven enumerated document requests and originally required WyoLaw to respond by December 9, 2019, but the parties agreed to extend the deadline to December 20, 2019.

[¶8]    WyoLaw provided a partial response to the subpoena on December 23, 2019, responding to eight of the enumerated requests with a reservation of its rights to further object.   The parties attempted to resolve their dispute concerning the subpoenaed documents, and when that failed, WyoLaw filed a petition to modify or set aside the

---

[1] WyoLaw asserts that it is no longer using the name Summit Law due to trademark issues.  Nonetheless, several documents in the record use the name Summit Law and some clients and complainants referred to WyoLaw as Summit Law.  To avoid any confusion, we refer to the entity only as WyoLaw throughout this opinion.

2

subpoena. In response, the Attorney General filed an opposition and counter-petition requesting that the district court enforce the subpoena.

[¶9] In support of its petition, WyoLaw argued that: (1) the plain language of the WCPA exempts attorneys and law firms from its coverage; (2) the subpoena violated the Dormant Commerce Clause of the United States Constitution; (3) the Attorney General did not have probable cause to issue the subpoena; (4) the subpoena was overbroad and created an undue burden on WyoLaw; and (5) the documents were protected from disclosure by attorney-client privilege and the work product doctrine.

[¶10] On May 7, 2020, the district court held a hearing on the matter, and on May 21, 2020, it denied WyoLaw's petition. It ruled that the Attorney General had authority under the WCPA to investigate WyoLaw and probable cause to issue the subpoena. It further ruled that WyoLaw failed to establish grounds to set aside the subpoena. WyoLaw timely appealed the district court's order.[2]

## DISCUSSION

### A.    Probable Cause Under the WCPA

[¶11] The WCPA authorizes the Attorney General to subpoena witnesses or documents, and collect evidence, if it has "probable cause" to suspect that an entity has engaged in, or is engaging in, an act or practice that violates the Act. Wyo. Stat. Ann. § 40-12-112(a) (LexisNexis 2019). The district court held that probable cause, as used in the Act, means "sufficient and reasonable information to support a belief that a violation of the WCPA has occurred or is occurring." WyoLaw contends that the district court's definition is not rigorous enough. It urges this Court to instead give the term the same meaning it has in the context of a criminal search or seizure, and to apply those same principles when the Attorney General seeks to justify an investigative subpoena issued under the Act.

[¶12] The meaning the legislature intended for the term "probable cause" as used in the WCPA is a question of statutory interpretation that we review de novo. *Matter of Estate of Britain*, 2018 WY 101, ¶ 15, 425 P.3d 978, 982-83 (Wyo. 2018) ("This Court interprets statutes as a matter of law de novo."). "When interpreting a statute, we seek the legislature's intent as 'reflected in the plain and ordinary meaning of the words used in the statute.'" *In re Interest of JB*, 2017 WY 26, ¶ 12, 390 P.3d 357, 360 (Wyo. 2017) (internal citations omitted). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Lozano v. Cir. Ct. of Sixth Jud. Dist.*, 2020 WY 44, ¶ 15, 460 P.3d 721, 728 (Wyo. 2020)

---

[2] Although a trial court's ruling enforcing a subpoena would not normally be an appealable order, the State contends that this is an order affecting a substantial right in a special proceeding under Wyoming Rule of Appellate Procedure 1.05(b). WyoLaw did not elaborate on the basis for our jurisdiction, but it has not disagreed with the State's position.

(quoting *Sullivan v. State*, 2019 WY 71, ¶ 10, 444 P.3d 1257, 1260 (Wyo. 2019)). We presume that the legislature acts with full knowledge of existing law, and that it intends new statutes to be read in harmony with that existing law and "as part of an overall and uniform system of jurisprudence." *Hayse v. Wyo. Bd. of Coroner Standards*, 2020 WY 4, ¶ 6, 455 P.3d 267, 270 (Wyo. 2020) (quoting *Wyoming Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019)).

[¶13] The relevant provision of the WCPA provides:

> If, by inquiry by the enforcing authority or as a result of complaints, the enforcing authority has ***probable cause*** to believe that a person has engaged in, or is engaging in, an act or practice that violates this act, investigators designated by the Wyoming attorney general may administer oaths and affirmations, subpoena witnesses or matter, and collect evidence.

Wyo. Stat. Ann. § 40-12-112(a) (emphasis added).

[¶14] Since the WCPA does not define the term "probable cause," WyoLaw contends that the legislature must have intended it to be defined with reference to existing law, which it argues consisted only of that which governs criminal searches and seizures. We disagree. The law has long recognized a difference in the Fourth Amendment protections afforded an individual subject to a search or seizure in a criminal investigation from those afforded to an agency's investigative subpoena.

> [T]he Fourth [Amendment], if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. ***The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable***.
>
> * * * *
>
> ***The requirement of 'probable cause***, supported by oath or affirmation' literally applicable in the case of a warrant ***is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry***.

4

*Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-09, 66 S.Ct. 494, 505-06, 90 L.Ed. 614 (1946)) (footnote omitted); *see also United States v. Bisceglia*, 420 U.S. 141, 146, 95 S. Ct. 915, 919, 43 L. Ed. 2d 88 (1975) ("[T]he investive authority so provided is not limited to situations in which there is probable cause, ***in the traditional sense***, to believe that a violation of the tax laws exists." (emphasis added)); *In re Reed*, 444 P.2d 329, 331-32 (Wyo. 1968) (use of term "probable cause" in worker's compensation statute departs from its use "in seizures, search warrants, malicious prosecution, guilt or innocence, defamation, etc."); 32 Wright & Miller, *Fed. Prac. & Proc. Jud. Rev*. § 8143 (1st ed. Apr. 2021 update); 1 Admin. L. & Prac. § 3:10 (3d ed. Feb. 2021 update).

[¶15]  Although the Attorney General's office may not technically be an administrative agency, we believe the law that applies to administrative agency subpoenas was intended to govern the scope of the Attorney General's power in this instance.  Throughout this opinion, we therefore refer to the law governing administrative agencies and their power to subpoena information under the Consumer Protection Act, while recognizing that the Attorney General's overall role in our system of government is greater than that, and that the Attorney General is probably not an administrative agency in the conventional sense, but acts in a similar capacity under the Act.  *See* Wyo. Stat. Ann. § 9-1-601 (LexisNexis 2019) (establishing the office of the Attorney General), and § 9-1-603 (containing an impressive list of the duties and powers of the Attorney General).

[¶16]  In addition to the less stringent probable cause standard recognized in *Oklahoma Press*, the law has also long recognized that "an administrative agency's authority to request records and undertake other investigatory functions is extremely broad."  *Santa Fe Energy Prod. Co. v. McCutcheon*, 90 F.3d 409, 414 (10th Cir. 1996) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950)).  Thus, when the legislature enacted the Section 112 probable cause requirement, the existing law included a well-established recognition of both an agency's broad investigative authority and a relaxed definition of probable cause to support an administrative subpoena.  Since we presume that the legislature acts with full knowledge of existing law, and that it intends new statutes to be read in harmony with that existing law, *Hayse*, ¶ 6, 455 P.3d at 270, we are unable to infer a legislative intent to incorporate principles of criminal law that were long ago rejected in the context of administrative investigations.

[¶17]  The definition of probable cause adopted by the district court and urged by the Attorney General is consistent with this long-recognized distinction.  It is also consistent with the standard the West Virginia Supreme Court of Appeals adopted in interpreting a similar probable cause requirement in its consumer protection statute.  *Cavalry SPV I, LLC v. Morrisey*, 752 S.E.2d 356, 365 (W. Va. 2013).  The West Virginia court observed that Wyoming is the one other state that "has promulgated a similar statute requiring the existence of probable cause to support the issuance of an investigative subpoena to determine whether the state's consumer protection laws have been, or are being, violated."

*Id.* at 365 n.12. It interpreted the probable cause requirement in West Virginia statutes as follows:

> Probable cause to support the issuance of "an investigative subpoena . . . exists when facts and circumstances . . . would warrant an honest belief in the mind of a reasonable and prudent person that an offense has been, or is being, committed and that . . . information relative to the commission of that offense is in the possession of the person or institution to whom the subpoena is directed."

*Cavalry*, 752 S.E.2d at 365 (quoting *State v. Fregien*, 127 P.3d 1048, 1050 (Mont. 2006)).

[¶18] In keeping with the longstanding precedent governing administrative investigations and the persuasive authority from the West Virginia court, we hold, as the district court did, that an investigative subpoena is supported by probable cause under Section 112 when the Attorney General has sufficient and reasonable information to support a belief that a violation of the WCPA has occurred or is occurring.

## B.     Attorney General's Authority to Investigate Extraterritorial Complaints

[¶19] WyoLaw contends that under the WCPA, the Attorney General has no authority to investigate complaints from non-Wyoming consumers, and that those complaints cannot provide the probable cause necessary to support the investigative subpoena. This claim again presents a question of statutory interpretation that we review de novo. *Archer v. State ex rel. Wyo. Dep't of Trans.*, 2018 WY 28, ¶ 7, 413 P.3d 142, 146 (Wyo. 2018).

[¶20] The WCPA authorizes the Attorney General to subpoena witnesses or matter and collect evidence if by its own inquiry or "as a result of complaints," it has probable cause to believe that an entity has engaged in, or is engaging in, an act or practice that violates the Act. Wyo. Stat. Ann. § 40-12-112(a). Nothing in the Act's plain language limits the Attorney General's investigative reach to complaints originating in Wyoming, and we will not read such a restriction into the statute. *Delcon Partners LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019) (quoting *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 20, 329 P.3d 936, 945 (Wyo. 2014) ("[E]xceptions not made by the legislature in a statute cannot be read into it.")).

[¶21] On the contrary, the Act contemplates that subpoenaed documents may be located outside the state, which suggests that the legislature intended that the Attorney General's investigation might take it beyond this state's boundaries. It provides:

> If matter that the [Attorney General] seeks to obtain by subpoena is located outside the state, the person subpoenaed

6

may make it available to the enforcing authority to examine the matter at the place where it is located. The enforcing authority may designate representatives, including officials of the state in which the matter is located, to inspect the matter on its behalf, and the enforcing authority may respond to similar requests from officials of other states.

Wyo. Stat. Ann. § 40-12-112(b).

[¶22] Additionally, we presume that the legislature acts with full knowledge of existing law, and that it intends new statutes to be read in harmony with that law and "as part of an overall and uniform system of jurisprudence." *Hayse*, ¶ 6, 455 P.3d at 270. We thus presume that it enacted Section 112 with an understanding that "an administrative agency's authority to request records and undertake other investigatory functions is extremely broad." *Santa Fe Energy*, 90 F.3d at 414 (citing *Morton Salt*, 338 U.S. at 642-43, 70 S.Ct. at 364); *see also* 32 Wright & Miller, *Fed. Prac. and Proc. Jud. Rev*. § 8143 (1st ed. Apr. 2021 update) (United States Supreme Court has given agencies "extreme latitude in asserting investigative jurisdiction"). We may also presume that had the legislature intended to geographically limit the Attorney General's investigative authority, it would have expressly done so.

[¶23] By its plain terms, the WCPA does not restrict the Attorney General from investigating complaints that originate outside Wyoming or from using those complaints as probable cause to support an investigative subpoena. WyoLaw's reliance on *Grover Irrigation & Land Co. v. Lovella Ditch, Reservoir & Irrigation Co.*, 21 Wyo. 204, 131 P. 43, 61 (1913), and *Ludvik v. James S. Jackson Co.*, 635 P.2d 1135, 1141 (Wyo. 1981), to suggest otherwise is misplaced.

[¶24] *Grover* and *Ludvik* hold that a Wyoming law will not be enforced beyond its boundaries unless the legislature uses language that shows a clear intention to have the law so enforced. *Ludvik*, 635 P.2d at 1141; *Grover*, 131 P. at 61. At this stage, however, this case does not involve an enforcement action. We are therefore not asked to interpret the extent of the Attorney General's *enforcement* authority, but rather its *investigative* authority, and the question of whether the WCPA applies to extraterritorial conduct is not before the Court. *See United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 470-71 (2d Cir. 1996) (at the investigative stage, a court need not determine "whether the subpoenaed party is within the agency's jurisdiction or covered by the statute it administers; rather the coverage determination should wait until an enforcement action is brought against the subpoenaed party") (citing *Endicott Johnson v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943)); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1052-53 (2d Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974)) (agency "must be free without undue interference or delay to conduct an investigation which will

adequately develop a factual basis for a determination as to whether particular activities come within the [agency's] regulatory authority").

[¶25] It is too early to know whether the out-of-state complaints the Attorney General's office is investigating will lead to an enforcement action against WyoLaw, but it is within its authority under the WCPA to conduct an investigation into such complaints and to issue subpoenas to do so.

## C. Probable Cause to Support Investigative Subpoena

[¶26] We have not previously reviewed a district court ruling on probable cause to support an administrative subpoena. While the probable cause standard applicable to criminal case searches and seizures does not apply here, our standard of review in such cases is instructive. As is the case when we review the sufficiency of an affidavit to support a search warrant, the court in this case did not hear witness testimony. Under such circumstances, we have said that de novo review is proper.

> The reasons which normally underlie deferring to the district court's denial of a motion to suppress—its ability to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions at the hearing on the motion—are absent when reviewing the sufficiency of an affidavit to support a determination of probable cause.

*TJS v. State*, 2005 WY 68, ¶ 9, 113 P.3d 1054, 1057 (Wyo. 2005) (quoting *Cordova v. State*, 2001 WY 96, ¶ 10, 33 P.3d 142, 147-48 (Wyo. 2001)); *see also Snell v. State*, 2014 WY 46, ¶ 10, 322 P.3d 38, 41 (Wyo. 2014).

[¶27] Employing the definition of probable cause that we have just described, we must review the record to determine whether the Attorney General offered sufficient and reasonable information to support a belief that WyoLaw had violated or was violating the WCPA. We again emphasize that at this stage, we are not concerned with whether the investigation will yield a successful enforcement action.

> The process of reviewing an administrative subpoena for judicial enforcement is not one for a determination of the underlying claim on its merits . . . . To establish its authority to investigate, the [agency] need only present an "arguable" basis for jurisdiction. As long as jurisdiction is "plausible" and not "plainly lacking," the subpoena should be enforced, unless the party being investigated demonstrates that the subpoena is unduly burdensome.

*E.E.O.C. v. Randstad*, 685 F.3d 433, 442 (4th Cir. 2012) (internal citations omitted); *see also Endicott Johnson*, 317 U.S. at 509, 63 S.Ct. at 343 (district court must enforce administrative subpoena unless the evidence sought was "plainly incompetent or irrelevant to any lawful purpose" of the agency).

[¶28] Under the WCPA, an entity is prohibited from engaging in "a deceptive trade practice" in the course of its business, and the definition of that term includes a number of specifically identified acts. Wyo. Stat. Ann. § 40-12-105(a)(i)-(xiv), (xvi)-(xvii). The Act also includes a general prohibition on "unfair or deceptive acts or practices." § 40-12-105(a)(xv). "Although the WCPA does not define these terms, a 'deceptive practice' has broadly been understood as one that is likely to mislead consumers, and an 'unfair practice' as one that offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Nicklas v. Pro. Assistance, LLC*, No. 18-CV-0066-SWS, 2018 WL 8619646, at *3 (D. Wyo. Sept. 26, 2018) (quoting 152 Am. Jur. *Proof of Facts* 3d 409 § 11 (2016)); *see also State ex rel. Stenberg v. Consumer's Choice Foods, Inc.*, 755 N.W. 2d 583, 591 (Neb. 2008) (defining an unfair or deceptive practice as one that is "immoral, unethical, oppressive, or unscrupulous") (citing *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998)); *Patterson v. Beall*, 19 P.3d 839, 847 (Okla. 2000) (noting that many state consumer protection statutes do not specifically define what constitutes an unfair trade practice to ensure broad protection based on individual circumstances) (citing Donald M. Zupanec, Annotation, *Practices Forbidden by State Deceptive Trade Practices and Consumer Protection Acts*, 89 A.L.R.3d 449 (1979 & Supp. 2000)).

[¶29] The record demonstrates that the Attorney General had probable cause to believe that WyoLaw had engaged in or was engaging in unfair or deceptive acts or practices. It includes the affidavit of the Attorney General's investigator Chris Dahmke, and its attachments. Mr. Dahmke attested (footnote omitted):

> 5.    In the [Attorney General's] investigation of WyoLaw, LLC ("WyoLaw"), I have recognized a pattern of consumer complaints regarding the debt settlement services the company purports to offer. The [Attorney General], to date, has received four formal (4) complaints and three (3) other letters and emails from consumers who contracted with WyoLaw for assistance in negotiating the settlement of their debts. True and accurate copies of these complaints are attached as Attachments A-G. The [Attorney General] has also obtained a list of over eighty (80) complaints submitted to the Better Business Bureau Serving Northern Colorado and Wyoming.

9

6. I have personally reviewed and am familiar with each of the consumer complaints submitted to our office concerning WyoLaw.

7. I have also reviewed and am familiar with the complaints the Attorney General has obtained from the Better Business Bureau and the documents produced to our office by WyoLaw pursuant to the Attorney General's *Civil Investigative Subpoena*. True and accurate copies of four documents from this production—WyoLaw's "Welcome Package," in-person presentation script, "Roadmap to First Settlement" form, and "Scripts and Tips" sheet—are attached as Attachments H-K respectively.

8. The consumer complaints submitted to our office, in addition to the complaints obtained from the Better Business Bureau, generally present the following common pattern regarding WyoLaw's services.

9. WyoLaw and/or its representatives and agents represents to consumers that it is a debt-settlement law firm that will negotiate with their creditors and settle their outstanding debts for less than is due and owing.

10. Based on these representations, consumers hire WyoLaw to act as their attorneys in settling the debts that they enroll in the firm's program. Consumers make monthly payments to WyoLaw through a third party account, stop paying their creditors, and refer all creditor communications to WyoLaw. Consumers take these actions based on WyoLaw's directions and representations that the firm will be able to more effectively negotiate if it is the exclusive point of contact with creditors and has monetary leverage to encourage negotiation. These representations are found in the in-person presentation script, which WyoLaw representatives read to prospective clients, and in the "Welcome Package," which WyoLaw sends to new enrollees, among other sources.

11. Generally, WyoLaw initiates little if any contact with consumers following the first month of their representation and throughout the remainder of their representation. This is contrary to the services WyoLaw states it will provide consumers in the "Roadmap to First Settlement"

10

form distributed to new enrollees. This form states that clients can expect a monthly check-in call as well as a "Strategy Call" in month three for purposes of explaining the firm's plan to deal with the client's creditors.

12.     Over the span of several months, consumers' finances worsen, and creditors escalate collection efforts. Months into the program, upon attempting to contact WyoLaw about these problems, consumers are unable to speak with any attorneys about their case. In many cases, clients discover the firm has performed little to no work in contacting their creditors or negotiating or settling their enrolled debts. This is contrary to the representations made by WyoLaw in the in-person presentation script WyoLaw representatives read to all prospective clients and the "Welcome Package" WyoLaw sends to all new enrollees, as well as the general impression consumers claim they received of WyoLaw's services that induced them to hire the firm.

13.     Upon being sued by their creditors, at least two (2) consumers were forced to answer complaints in court without any assistance from WyoLaw. This is also contrary to the services WyoLaw promises it will provide its clients in its in-person presentation script and Welcome Package, as well as the general impression conveyed to clients about the firm's services. A copy of a default judgment entered against one of these clients by one of their enrolled creditors is attached as Attachment L.

14.     When attempting to terminate their agreement with WyoLaw, several consumers reported difficulty in confirming program termination and receiving a refund. Additionally, many consumers received a significantly lesser refund than what they believe they are due, especially considering WyoLaw's alleged lack of assistance and services.

15.     In sum, WyoLaw has displayed a common pattern of misrepresenting the services it will offer to its clients. The firm promises legal representation as well as administrative support in assisting consumers in negotiating and settling their debts. The attached consumer complaints demonstrate WyoLaw's pattern of failing to provide these services as promised.

11

[¶30] The Act permits the Attorney General's probable cause determination to be based on its own inquiry or consumer complaints. Wyo. Stat. Ann. § 40-12-112(a). The complaints and other documents attached to Mr. Dahmke's affidavit support the statements to which he attested, and we are satisfied that the Attorney General had a sufficient and reasonable basis to believe that WyoLaw had violated the Act or was engaging in unfair or deceptive practices.

[¶31] For example, the record contains multiple reports that WyoLaw promised potential clients legal representation, but after they signed up and began paying WyoLaw's fees, they were unable to speak to an attorney, even after creditor actions were filed against them. Additionally, clients were told to stop paying their creditors and were required to enroll in an automatic bank withdrawal program to pay fees based on a schedule unrelated to services provided. Some clients received emails informing them that they could receive better results if they took out a loan for WyoLaw's "debt resolution program." A third-party company would send the email and offer the loan to fund what it termed the "lump sum" method for WyoLaw's debt resolution services. The email stated that if the client took out the loan, it would help WyoLaw "do a better and faster job."

[¶32] These are only a few examples of the types of complaints the Attorney General relied upon to support its reasonable belief that WyoLaw lured consumers into a relationship with the promise of services that were not delivered. Taken as a whole, Mr. Dahmke's affidavit with supporting attachments provided a sufficient and reasonable basis to support the Attorney General's investigative subpoena. We thus affirm the district court's ruling that the Attorney General had probable cause to issue the subpoena.

## D. Dormant Commerce Clause and Due Process Claims

[¶33] WyoLaw next contends that because it has insufficient contacts with this state, the Attorney General's investigation based on out-of-state complaints violates the commerce and due process clauses of the United States Constitution. "Issues of constitutionality present questions of law, which we review de novo." *Sam v. State*, 2017 WY 98, ¶ 76, 401 P.3d 834, 859 (Wyo. 2017).

## 1. Dormant Commerce Clause Claim

[¶34] Under Article 1, Section 8, Clause 3 of the United States Constitution, Congress has the power to "regulate Commerce with foreign Nations, and among the several States . . . ." The Commerce Clause has a negative or dormant corollary, which "prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and 'thereby imped[es] free private trade in the national marketplace.'" *Travelocity.com LP v. Wyo. Dep't of Revenue*, 2014 WY 43, ¶ 66, 329 P.3d 131, 147 (Wyo. 2014) (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287, 117 S.Ct. 811, 818, 136 L.Ed.2d 761 (1997)). A state

statute violates the Dormant Commerce Clause if it regulates conduct that occurs "entirely outside the boundaries of the state in question." *Quik Payday, Inc. v. Stork*, 549 F.3d 1302, 1307 (10th Cir. 2008) (quoting *KT & G Corp. v. Att'y Gen. of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008)).

[¶35]   WyoLaw has numerous ties to Wyoming.  It is a Wyoming entity, organized in 2017 by a person who was a Wyoming lawyer at the time.  Its December 5, 2019 annual report to the Wyoming Secretary of State indicated that its principal office was located in Casper, Wyoming with a mailing address there.  Its client retainer agreement lists a Casper address on the first page, and it advises its clients that to cancel an agreement with it, the client must send a "notice of right to cancel" to WyoLaw at an address in Casper.  The letter of representation it sends to its clients' creditors also lists the firm's address in Casper, Wyoming, and it asks that communications from the creditor be mailed to that address, so that the company "can present this information to [its] client."  Furthermore, its website specifies its terms and services and states that the terms are to be construed in accordance with Wyoming law.

[¶36]   As to its solicitation and representation of Wyoming consumers, the record contains no evidence that WyoLaw specifically targets Wyoming consumers with its advertising and marketing, but it does maintain a website and has three attorney-members licensed to practice in Wyoming.  Additionally, while WyoLaw has reported that it has "stopped accepting clients in Wyoming," it also admitted that it "is continuing to complete its course of representation for a few dozen Wyoming residents who retained the firm in its early days."

[¶37]   WyoLaw does not address any of these connections with citations to relevant authority or provide cogent analysis, but instead simply asserts that it maintains only a virtual office in Wyoming and that none of its contacts are sufficient to permit the Attorney General's investigation under the WCPA.  We will therefore not address the claim further. *See Harrison v. State*, 2020 WY 43, ¶ 2, 460 P.3d 260, 261 (Wyo. 2020) (Court will not consider arguments unsupported by cogent argument and relevant authority) (citing *Osban v. State*, 2019 WY 43, ¶ 7 n.2, 439 P.3d 739, 741 n.2 (Wyo. 2019)).

2.     **Due Process Claim**

[¶38]   The Attorney General contends that WyoLaw did not raise its due process claim below, and that this Court should therefore disregard it.  In its reply brief, WyoLaw asserts that it adequately raised the issue by arguing to the district court that allowing the Attorney General's investigation to go forward with the subpoena involved here would create arbitrary results.

[¶39]   "Our precedent is clear that an argument may not be made for the first time on appeal." *Davis v. State*, 2018 WY 40, ¶ 32, 415 P.3d 666, 678 (Wyo. 2018) (quoting

*Gumpel v. Copperleaf Homeowners Ass'n, Inc.*, 2017 WY 46, ¶ 32 n.7, 393 P.3d 1279, 1291 n.7 (Wyo. 2017)). We recognize only two exceptions to the rule: "when the issue raises jurisdictional questions or it is of such a fundamental nature that it must be considered." *Davis,* ¶ 32, 415 P.3d at 678 (quoting *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, 490 (Wyo. 2004)).

[¶40] WyoLaw did not raise its due process claim below or preserve it for appeal by alluding to arbitrary results. *See Rodriguez v. State*, 2019 WY 25, ¶ 22, 435 P.3d 399, 405 (Wyo. 2019) ("A non-jurisdictional issue is not preserved for appeal unless it is raised before the district court 'with at least a minimum effort to present a cogent legal argument.'") (quoting *Flood v. State*, 2007 WY 167, ¶ 12, 169 P.3d 538, 543 (Wyo. 2007)). Nor has it shown that the issue is fundamental. *See Davis*, ¶ 34, 415 P.3d at 678 ("The assertion of . . . a constitutional issue 'does not necessarily persuade this Court to consider the issue for the first time on appeal.'" (quoting *Crofts v. State ex rel. Dept. of Game & Fish*, 2016 WY 4, ¶ 24, 367 P.3d 619, 625 (Wyo. 2016)). We therefore decline to consider WyoLaw's due process claim.

### E.    WyoLaw's Claimed Exemption Under the WCPA

[¶41] WyoLaw next contends that because it is a law firm, it is exempt from investigation under the WCPA pursuant to the Act's provision that exempts certain acts or practices from its coverage. *See* Wyo. Stat. Ann. § 40-12-110(a)(i). This is again a question of statutory interpretation that we review de novo. *Britain*, ¶ 15, 425 P.3d at 982-83.

[¶42] At the outset, we note that it is not clear from the record that WyoLaw is a law firm as opposed to a debt resolution entity. *See, e.g.*, *James v. Wadas*, 724 F.3d 1312, 1317-18 (10th Cir. 2013) (requiring a case-by-case review to determine if an attorney or law firm "regularly" engages in debt collection under the Fair Debt Collection Practices Act). The record indicates that WyoLaw's clients are often initially contacted by a third-party company, sometimes a lending company, which provides information about WyoLaw's "debt settlement services." After a potential client expresses interest in its services, WyoLaw sends an employee who is not a lawyer to give an in-person presentation and discuss how WyoLaw will negotiate with creditors to lower payments. The presentation designates the program as a "debt resolution program," and states that the "representative" of the law firm "is not an attorney" and "is not qualified to provide legal advice . . . or to answer questions outside the scope of the presentation." Additionally, the client retainer agreement provides (emphasis added):

> In addition to the legal services provided by [WyoLaw], **there are non-legal services related to the implementation, management and maintenance of Client's debt negotiation plan** performed under the supervision of [WyoLaw's] attorneys. . . .

14

> [WyoLaw] has a non-exclusive reciprocal referral agreement with independent contractors to provide these services under [WyoLaw's] direct supervision. Representatives of such independent contractors cannot and will not provide legal advice to the Client, and any such advice will only be communicated to Client by [WyoLaw]. Although these services are performed under [WyoLaw's] supervision, **a court or courts might determine that there is no attorney-client relationship between Client and the independent contractor representatives in regard to these services**, and communications between Client and the independent contractor representatives might not be protected by attorney-client privilege.

[¶43] In any event, even if WyoLaw were considered a law firm, the WCPA would not provide a blanket exemption from its prohibitions. The provision in question, Wyo. Stat. Ann. § 40-12-110(a)(i), provides that the WCPA does not apply to "[a]cts or practices required or permitted by state or federal law, rule or regulation or judicial or administrative decision." WyoLaw contends this section exempts any entity regulated by another authority from the Act's coverage, and that since the Wyoming Supreme Court and Wyoming State Bar permit and regulate attorneys, it is exempt from the Act's coverage. The State argues that "[t]he more appropriate interpretation is that an entity is not subject to consumer protection liability if its specific actions are expressly required or permitted according to another regulatory scheme." We agree with the State's interpretation.

[¶44] The WCPA's exemption applies to "acts or practices required or permitted" by other laws. Wyo. Stat. Ann. § 40-12-110(a)(i). It contains no reference to acts or practices regulated by another entity, and this Court may not add language to a statute under "the guise of statutory interpretation." *Delcon Partners*, ¶ 10, 450 P.3d at 685. We will instead join the majority of other courts that have concluded that their similarly worded exemptions serve to avoid conflicts between laws, not to exclude from coverage every activity that is regulated by another statute or authority. *See Crowe v. Tull*, 126 P.3d 196, 200 (Colo. 2006); *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56 (Colo. 2001) (en banc), *as modified on denial of reh'g* (Jan. 11, 2002); *Robertson v. State Farm Fire & Cas. Co.*, 890 F. Supp. 671, 676 (E.D. Mich. 1995); *Skinner v. Steele*, 730 S.W.2d 335, 337-38 (Tenn. App. 1987); *WVG v. Pac. Ins. Co.*, 707 F. Supp. 70, 72 (D. N.H. 1986); Diana Rabeh, *Is Preemption Right for You? The Third Circuit Applies Preemption to A Misleading Drug Advertisement Claim in Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.*, 53 Vill. L. Rev. 743, 754-55 (2008) (explaining that a majority of states have

interpreted similar exemptions to apply to conduct explicitly authorized by the law or ruling of another state or federal agency).

[¶45] For example, in *Showpiece Homes*, the Colorado Supreme Court rejected an argument that its similar statute exempted insurance companies from that state's consumer protection statute.

> The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations. It is intended to avoid conflict between laws, not to exclude from the Act's coverage every activity that is regulated by another statute or agency.

*Showpiece Homes Corp.*, 38 P.3d at 56.

[¶46] Subsequently, in *Crowe*, the Colorado court reversed a trial court decision barring a private action under the consumer protection statutes when it involved an attorney's practice of law. 126 P.3d at 200. The court found that while it had exclusive jurisdiction over attorneys engaged in the practice of law, the Colorado consumer protection statutes, as applied to attorneys, complement, rather than contradict, "[the] court's implementation of the professional rules and cannot be seen as impinging in any real sense upon our further right to discipline those licensed by us to practice law." *Id.* at 208 (internal quotation marks omitted).

[¶47] We agree and note that this interpretation finds support in the Wyoming Rules of Professional Conduct, which provide:

> When the full protections of all of the Rules of Professional Conduct do not apply to the provision of law-related services, **principles of law external to the Rules, for example, the law of principal and agent, govern the legal duties owed to those receiving the services.** Those other legal principles may establish a different degree of protection for the recipient with respect to confidentiality of information, conflicts of interest and permissible business relationships with clients.

Wyo. R. Prof. Cond. 5.7 cmt. 11 (emphasis added).

[¶48] The record before us does not establish that WyoLaw operates as a law firm, but even if it did, the WCPA does not exempt its operations from coverage under the Act. The Section 110(a)(i) exemption does no more than defer to contradictory laws that permit or

16

require a specific act or practice that might otherwise be unlawful under the Act. We therefore reject WyoLaw's claim of a blanket exemption under the Act.

## F.    Attorney-Client Privilege and Work Product Protection

[¶49] We last address WyoLaw's claim that the district court erred in rejecting its assertion that many of the documents the Attorney General subpoenaed are protected by the attorney-client privilege and attorney work product doctrine. We review a district court's discovery rulings, including its ruling on a claim of privilege, for an abuse of discretion. *Herrick v. Jackson Hole Airport Bd.*, 2019 WY 118, ¶ 11, 452 P.3d 1276, 1280 (Wyo. 2019); *see also McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170, 197 L. Ed. 2d 500 (2017), as revised (Apr. 3, 2017) ("[A] district court's decision to enforce an EEOC subpoena should be reviewed for abuse of discretion, not de novo."). "On review, our primary consideration is the reasonableness of the trial court's decision," and the appellant has the burden of proving an abuse of discretion. *Herrick*, ¶ 11, 452 P.3d at 1280.

[¶50] "The party seeking to invoke the attorney-client privilege has the burden of establishing its applicability." *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n.6 (10th Cir. 1998); *see also Dishman v. First Interstate Bank*, 2015 WY 154, ¶ 21, 362 P.3d 360, 367 (Wyo. 2015) ("The party asserting the privilege has the burden of establishing it applies."); *Hanson v. Swainston*, No. 2:17-CV-00193-MLC, 2018 WL 3973405, at *2 (D. Wyo. Aug. 20, 2018). To satisfy this burden, it is insufficient to make a blanket assertion that documents contain privileged information. *United Pacific Ins. Co.*, 152 F.3d at 1276 n.6 ("To satisfy this burden it is insufficient for the FDIC merely to contend that documents contain privileged information. Therefore, on remand, the FDIC must make a more substantial showing to invoke the attorney-client privilege and avoid production of the records at issue." (internal citations omitted)); *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir.1974) (holding that assertions of privilege must normally be raised "as to each record sought and each question asked so that . . . the court can rule with specificity").

[¶51] Instead, the party asserting a privilege must make a clear showing for each document request and give a detailed description of the documents it claims are protected with a precise reason for asserting the privilege to enable the Attorney General to contest the claim, and the district court to assess any applicability of the privilege. W.R.C.P. 81(b) (providing the Wyoming Rules of Civil Procedure may apply to special statutory proceedings); W.R.C.P. 45(d)(2)(A) ("When information or material subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim."); *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) ("The party must bear the burden as to specific questions or documents, not by making a blanket claim."); *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1266 (D. Colo. 2010) ("Respondents must provide sufficient

information to enable Petitioners and the court to determine whether each element of the privilege has been satisfied.  On raising the privilege, a general allegation is insufficient.  A clear showing must be met by setting forth the items or category objected to and the reason for that objection.") (internal citations and quotations marks omitted); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. Civ.A. No. 94-2395-GTV, 1995 WL 625962, at \*7 (D. Kan. Oct. 5, 1995) ("A party seeking to assert these privileges must make a clear showing that they apply.  To carry the burden, the party must give a detailed description of the documents to be protected 'with precise reasons given for the particular objection to discovery.'") (internal citations omitted).

[¶52]  We have recognized the necessity of certain privileges and work product protection. *See, e.g.*, *Arnold v. Mountain W. Farm Bureau Mut. Ins. Co.*, 707 P.2d 161, 165 (Wyo. 1985) ("For the system to properly function the attorney-client privilege must be protected.").  Accordingly, district courts must determine the applicability and scope of a privilege or work product protection on a case-by-case basis.  *Upjohn Co. v. United States*, 449 U.S. 383, 396-97, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981) (finding the spirit of F.R.E. 501 requires determination of the existence of an attorney-client privilege in enforcement of a subpoena is on a case-by-case basis when documents are requested in an investigatory subpoena); *Lubing v. Tomlinson*, 2020 WY 105, ¶ 33 n.10, 469 P.3d 375, 386 n.10 (Wyo. 2020) ("When federal rules are virtually identical to their Wyoming counterparts, federal case law interpreting them is persuasive."); *see also Gale v. State*, 792 P.2d 570, 624 (Wyo. 1990) (Urbigkit, J., dissenting) (quoting *In re Zuniga*, 714 P.2d 632, 639-40 (6th Cir. 1983), *cert.denied*, 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983)).  Thus, we have discussed that the party asserting a privilege can provide the necessary information in a privilege log to enable other parties and the court to assess the applicability of a privilege or protection.  *See generally Dishman*, ¶ 21, 362 P.3d at 367 ("[U]nder Rule 26(b)(5)(A), when a party withholds information otherwise discoverable on the basis that it is privileged, the party must make the claim expressly and describe the nature of the documents withheld in a manner that . . . will enable other parties to assess the applicability of the privilege or protection.").

[¶53]  In asserting its privilege claim below, WyoLaw did not provide a privilege log or identify in any manner the documents or materials it claims are protected by the attorney-client privilege.  Yet on appeal, it contends that "[a]t a minimum, the District Court should have permitted WyoLaw to create a privilege log and assert privilege claims with respect to documents at the time of production."  The record contains nothing to suggest that WyoLaw was denied an opportunity to submit a privilege log or otherwise meaningfully assert its privilege claim.  The district court found that WyoLaw's attorney-client privilege or attorney work product claims with respect to the remaining enumerated requests within the subpoena were without merit.  Upon review of the record, we agree with the district court and find that its decision was reasonable given WyoLaw's blanket assertion of the attorney-client privilege.

[¶54] As WyoLaw states, the subpoena "seeks documents pertaining to WyoLaw's operations . . . and seeks 27 broad categories of documents that collectively cover virtually every aspect of WyoLaw's national business and operations." We have reviewed the investigative subpoena and do not find any requests that implicate the attorney-client privilege. Indeed, the only client-related request for which there is no written waiver from putative clients is Request No. 23, which seeks only a list of client names with the attorney's name and licensure that represents or has represented the client. This information is not subject to attorney-client privilege. *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1488 (10th Cir. 1990) ("It is well recognized in every circuit, including our own, that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege."); *see also Dishman*, ¶ 23, 362 P.3d at 368 ("Typically, the attorney-client privilege does not extend to the fee agreement, billing records, or expense reports.").

[¶55] The only other request that may seek protected information is Request No. 24, which seeks documents related to debt settlement agreements entered on behalf of customers. This request does not implicate an attorney-client privilege but instead may involve confidentiality issues subject to redaction rules. *See generally In re CCA Recordings 2255 Litig. v. United States*, 337 F.R.D. 310, 326 (D. Kan. 2020) (noting that personal, confidential, or private information is not necessarily protected by the attorney-client privilege); *Cornhusker Cas. Co. v. Skaj*, No. 11-CV-110-S, 2012 WL 12541138, at *3 (D. Wyo. June 13, 2012) ("Communications by a client to one who is not a lawyer, or at least [not] reasonably believed to be a lawyer, are not protected.") (quoting 8 Wright–Miller–Marcus, *Federal Practice & Procedure* § 2017, at 433 (3d ed. 2010)); *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("Inquiry into the general nature of the legal services provided by counsel does not necessitate an assertion of the privilege because the general nature of services is not protected by the privilege."); *Upjohn Co.*, 449 U.S. at 395, 101 S.Ct. at 685 (attorney-client "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with attorney").

[¶56] WyoLaw's claim of work-product protection is based on W.R.C.P. 26(b)(3)(A), which provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," and provides certain exceptions. *See Thomas v. Harrison*, 634 P.2d 328, 330 (Wyo. 1981) (general discussion of the rule's protections and exceptions). The above materials do not fall into the scope of that rule any more than they fall into the category of attorney-client privilege – there is no indication in this record that they were prepared in anticipation of litigation as the rule requires.

[¶57] Based on the record before us, we cannot find that the district court abused its discretion because we see nothing to indicate privileged information or work product was

requested. Furthermore, as discussed above, we cannot discern from the record that WyoLaw is a law firm or that there exists an attorney-client relationship between it and its clients or customers, whichever they may be.[3]

[¶58]  Affirmed.

---

[3] It is possible that as the Attorney General's investigation proceeds, additional information more arguably subject to the attorney-client privilege than that involved here may be sought.  Because the privilege belongs to the client and not the attorney, and may only be waived by the client, WyoLaw may withhold material to be produced under the subpoena under a claim of attorney-client privilege only if it (1) provides the Attorney General and files with the district court an appropriate and detailed privilege log, and (2) notifies the client(s) involved so they may raise a claim of privilege directly.  The client or WyoLaw on behalf of a client may then file an appropriate motion to quash or for a determination of privilege.  W.R.C.P 45(c)(3)(A)(iii). The Attorney General may file a motion to enforce the subpoena, as was done here. Regardless of how the issue comes before the district court, if it does, the court may then devise a plan to review material claimed to be privileged, in camera if necessary, and devise a plan to protect privileged material while still ensuring that the privilege has not been falsely asserted to impede the Attorney General's investigation.  *Dockter v. Lozano*, 2020 WY 119, ¶ 29, 472 P.3d 362, 370 (Wyo. 2020) ("The decision whether to waive the attorney-client privilege belongs solely to the client.") (quoting *Teniente v. State*, 2007 WY 165, ¶ 47, 169 P.3d 512, 528 (Wyo. 2007)); *Dishman*, ¶ 25, 362 P.3d at 368-69 (Wyo. 2015) (discussing if a party believes the material is privileged it may withhold the information but must provide an appropriate privilege log).

A district court has limited time and resources for an in-depth review of documents under an agency investigative subpoena, so we note that under W.R.C.P. 53, the court has discretion to appoint a special master to examine such records and require the parties to pay the master, if necessary.  We also note again that any bare assertion that such records contain privileged information should be rejected. *See generally United Pac. Ins. Co.*, 152 F.3d at 1276 n.6 ("Therefore, on remand, the FDIC must make a more substantial showing to invoke the attorney-client privilege and avoid production of the records at issue. . . . [T]he district court may adopt procedures, such as *in camera* review of allegedly privileged documents, to protect against disclosure of privileged communications [but] may not, however, impose a blanket prohibition on discovery of more detailed statements or records based on [a] bare assertion . . . .").